UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE | § | CIVIL ACTION NO. 2:17-CV-5394 |
| COMPLAINT OF RODI MARINE, LLC, | § | |
| AS OWNER AND OPERATOR OF THE | § | JUDGE MORGAN |
| M/V WILDCAT, PETITIONING FOR | § | |
| EXONERATION FROM OR | § | MAGISTRATE JUDGE NORTH |
| LIMITATION OF LIABILITY | § | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT DECLARING RODI MARINE, LLC
<u>OWES FIELDWOOD ENERGY LLC DEFENSE AND INDEMNITY</u>**

James D. Bercaw, T.A. (20492)
**KING & JURGENS, L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-3800
Facsimile:  (504) 582-1233
Email:  jbercaw@kingkrebs.com

*Counsel for Claimant / Third Party
Defendant, Fieldwood Energy LLC*

{N1512213 -}

# **TABLE OF CONTENTS**

| | Page |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING | 1 |
| STATEMENT OF ISSUES PRESENTED | 4 |
| SUMMARY OF ARGUMENT | 5 |
| STATEMENT OF UNCONTESTED MATERIAL FACTS | 6 |
| LAW AND ARGUMENT | 9 |
| I. The Standard for Summary Judgment | 9 |
| II. The Time Charter and the Brokerage Agreement are Maritime Contracts Interpreted in Accordance with the General Maritime Law. | 10 |
| III. Rodi Owes Fieldwood Defense and Indemnity from Rodi's Third Party Complaint. | 11 |
| IV. Rodi Owes Fieldwood Attorney's Fees Incurred in the Defense of Rodi's Third Party Complaint as well as in Pursuit of Defense and Indemnity from Rodi. | 14 |
| CONCLUSION | 15 |
| CERTIFICATE OF SERVICE | 15 |

## TABLE OF AUTHORITIES

| **Jurisprudence** | **Page** |
|---|---|
| *BDL Int'l v. Sodetal U.S.A. Inc.*, 377 F. Supp. 2d 518 (D.S.C. 2005) | 11 |
| *Bourg v. Chevron U.S.A. Inc.*, 91 F.3d 141 (5th Cir. 1996) | 10 |
| *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329 (5th Cir. 191) | 13 |
| *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 111 S. Ct. 2071 (1991) | 10 – 11 |
| *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207 (5th Cir. 1986) | 10, 12 |
| *Foster Wheeler Energy Corp. v. AN NING JIANG M/V*, 383 F.3d 349 (5th Cir. 2004) | 11 |
| *Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238 (5th Cir. 1980), *reh'g denied*, 636 F.2d 314 & 315 (5th Cir. 1981) | 12 |
| *In re Crescent Energy Servs., L.L.C.*, ___ F.3d ___, 2018 WL 3420665 (5th Cir. 2018) | 4, 10 |
| *International Marine, L.L.C. v. FDT, L.L.C.*, 619 Fed. Appx. 342 (5th Cir. 2015) | 9 – 10 |
| *Johnson v. Seacor Marine Corp.*, 404 F.3d 871 (5th Cir. 2005) | 11 |
| *Knox v. Bisso Marine, Inc.*, No. 2:16-cv-13350, 2017 WL 2098876 (E.D. La.) (Zainey, J.), *aff'd on other grounds*, 716 Fed. Appx. 370 (5th Cir. 2018). | 1, 13 – 14 |
| *LLOG Expl. Co. v. Signet Maritime Corp.*, 673 Fed. Appx. 422 (5th Cir. 2016) | 9 |
| *Marquette Transp. Co. v. Louisiana Machinery Co., Inc.*, 367 F.3d 398 (5th Cir. 2004) | 4 – 5 |

**Jurisprudence (*cont*.)**                                                                 **Page**

*Norfolk S. Ry. v. James N. Kirby, Pty Ltd.*,                                               10
543 U.S. 14, 125 S. Ct. 385 (2004)

*Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*,                        4, 9
779 F.3d 345 (5th Cir. 2015)

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*,                                       13
648 F.3d 258 (5th Cir. 2011)

*Priester v. Lowndes Co.*,                                                                  9
354 F.3d 414 (5th Cir.),
*cert. denied*, 543 U.S. 829 (2004)

*Royal Exch. Assur. Co. v. M/V GULF FLEET No. 54*,                                          14
1991 WL 99406 (E.D. La. 1991)

*Sumrall v. Ensco Offshore Co.*,                                                            13
291 F.3d 316 (5th Cir. 2002)

*Theriot v. Bay Drilling Corp.*,                                                            13
783 F.2d 527 (5th Cir. 1986)

**Rules**

Fed. R. Civ. P. 56(a)                                                                       9

MAY IT PLEASE THE COURT:

Claimant / third party defendant, Fieldwood Energy LLC ("Fieldwood"), files this motion for a partial summary judgment declaring that plaintiff-in-limitation / third party plaintiff, Rodi Marine, LLC ("Rodi"), owes Fieldwood defense and indemnity from Rodi's third party complaint (Doc. 5) filed against Fieldwood. As more fully explained in this memorandum, there are no genuine issues of material fact concerning Fieldwood's motion, which involve the Court's interpretation of a contractual indemnity provision. Accordingly, Fieldwood requests this Court to enter a partial summary judgment declaring that pursuant to the Brokerage Agreement executed by Kilgore Marine Services, LLC and Rodi, Rodi owes Fieldwood defense and indemnity for the claims asserted by Rodi in its third party complaint against Fieldwood, including all attorney's fees incurred by Fieldwood in the defense of Rodi's claims and in the pursuit of indemnity from Rodi, as well as all costs of these proceedings.

The issues in Fieldwood's motion have previously been addressed by Judge Zainey in the Court's Order and Reasons issued in *Knox v. Bisso Marine*, Inc., No. 2:16-cv-13350, 2017 W.L. 2098876 (E.D. La. 2017) (Zainey, J.), *aff'd on other grounds*, 716 Fed. Appx. 370 (5th Cir. 2018). There, the Court interpreted the identical indemnity language at issue in this case to require the vessel interests to defend and indemnify the vessel charterer from the vessel interests' own cross-claim against the vessel charterer for tort – based contribution and contractual defense and indemnity.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On May 31, 2017, Rodi filed its Complaint for Exoneration from or Limitation of Liability (Doc. 1) for any and all claims arising out of the April 18, 2017, allision of the M/V WILDCAT with the Sugar or "S" platform, located in Block 23, South Timbalier Area, on the

Outer Continental Shelf, off the Coast of Louisiana (hereafter "the Allision"). This Court set a September 4, 2017, deadline for all persons to file their claims as concerns the Allision. (Doc. 3 – 1.)

On September 3, 2017, Fieldwood filed its Answer and Affirmative Defenses to Rodi's complaint (Doc. 10), in which Fieldwood asserted as an affirmative defense the allegations and averments set forth in Fieldwood's Verified Claim (Doc. 10, 2nd aff. def.), and also filed its Verified Claim. (Doc. 11.) In its Verified Claim, Fieldwood asserted a cause of action against Rodi for contractual indemnity as follows:

XIII.

As a result of the Allision, Fieldwood is potentially exposed to liability for damages by one or more members of the crew of the WILDCAT, by property and economic damages by the owners and/or operators of S.T. 23-S, or for claims for contractual indemnity.

XIV.

Fieldwood is entitled to recover from Rodi contractual indemnity for any and all claims that may be asserted against Fieldwood as a result of the Allision, as well as pre-judgment interest through the date of entry of the judgment, and post-judgment interest until paid, all costs of these proceedings, and for the attorney's fees incurred in bringing this action.

(Doc. 11, Verified Claim, pp. 13 & 14.) On September 18, 2017, Rodi filed its Answer to the Claim of Fieldwood Energy, denying the allegations of paragraphs 13 and 14. (Doc. 18, paras. 13 & 14.)

Prior to the filing of Fieldwood's Verified Claim, Rodi had filed a third party complaint

(Doc. 5) against Fieldwood for contractual defense and indemnity, which incidental demand was included in Rodi's answer to the claim of Antonio Smith (*Id.*). Paragraph 8 of Rodi's third party complaint provided, as follows:

8.

[Rodi] entered into a brokerage agreement with Kilgore Marine Services, LLC, pursuant to which Kilgore brokered Rodi to Fieldwood, and Rodi's vessel, the M/V WILDCAT, was working for Fieldwood on or about April 18, 2017 when the M/V WILDCAT allied with a platform in the Gulf of Mexico, as more fully described in Rodi's complaint for limitation of liability.

Doc. 5, Third Party Complaint, p. 5, para. 8.)

Rodi claimed that pursuant to the Time Charter (which Rodi has abbreviated as "MTCA"), Fieldwood is obligated to defend and indemnify Rodi from "any and all claims by the Fieldwood passengers" of the WILDCAT, "including Antonio Smith, Lionel Every, Shawn Philbeck, Royce Mitchell, and Brian Dibb". (*Id.*, p. 6, para. 14.) Fieldwood has denied it owed Rodi indemnity, and therefore Rodi had filed a third party complaint against Fieldwood for breach of the contractual defense and indemnity provisions of the Time Charter.

Personal injury claims were filed in Rodi's limitation proceeding by the following individuals: Antonio Smith (Doc. 4, para. I(1) – "Claimant suffered severe bodily injuries"), Shawn Philbeck (Doc. 8, para. I – "Shawn Philbeck . . . sustained injuries"), and Lionel Every Jr. (Doc. 12, para. III(3.1) – "Claimant sustained severe and disabling injuries"). Rodi also settled the potential claims of the other passengers of the WILDCAT.

Fieldwood filed its answer and affirmative defenses (Doc. 19) to Rodi's third party complaint, denying any liability to Rodi, and raising certain affirmative defenses thereto. As

concerns Fieldwood's instant motion, Fieldwood incorporated into its answer to the third party complaint the prior allegations and averments of Fieldwood's Verified Claim, including Fieldwood's demand for contractual indemnity from Rodi. (Doc. 19, pp. 5 – 6, 2nd aff. def.)

This Court has rescheduled the trial of this matter to the week beginning March 25, 2019. (Doc. 54.) The pretrial conference will be held on February 14, 2019. (*Id*.)

Fieldwood now files its motion for partial summary judgment for a declaration from the Court that Rodi owes Fieldwood contractual defense and indemnity from Rodi's third party complaint and that Rodi must reimburse Fieldwood for the attorney's fees and costs incurred not only in the defense of Rodi's third party complaint but also in the pursuit of indemnity and defense from Rodi.

## STATEMENT OF ISSUES PRESENTED

1. Whether summary judgment is procedurally proper. The interpretation of an unambiguous indemnity provision in a maritime contract presents a legal issue for the Court reviewed *de novo*. *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 348 (5th Cir. 2015).

2. Whether the Time Charter and the Brokerage Agreement are maritime contracts to be interpreted under the general maritime law is a legal issue reviewed *de novo*. *In re Crescent Energy Servs., L.L.C.*, ___ F.3d ___, ___, 2018 WL 3420665 at *4 (5th Cir. 2018).

3. Whether the Brokerage Agreement obligates Rodi to defend and indemnify Fieldwood from Rodi's third party complaint involves the interpretation of a maritime contract, which is reviewed *de novo*. *Marquette Transp. Co. v. Louisiana Machinery Co., Inc.*, 367 F.3d 398, 402 (5th Cir. 2004).

4.  Whether the Brokerage Agreement obligates Rodi to reimburse Fieldwood for the attorney's fees and costs incurred by Fieldwood in the defense of Rodi's third party complaint and in the pursuit of contractual indemnity from Rodi involves the interpretation of a maritime contract, which is reviewed *de novo*. *Id.*

## SUMMARY OF ARGUMENT

Rodi and Kilgore Marine executed a Brokerage Agreement through which Kilgore Marine was appointed Rodi's agent for the purposes of obtaining time charters for Rodi's vessels, like the WILDCAT. Through the Brokerage Agreement, Kilgore Marine provided the WILDCAT and her crew for Fieldwood's use as time charterer, thereby fulfilling Kilgore Marine's obligations under its Master Time Charter Agreement with Fieldwood.

The Brokerage Agreement contained an indemnity provision which obligated Rodi to defend and indemnify the Broker Group – including Fieldwood – from any and all claims, including claims for personal injury or economic damages brought by Rodi arising directly or indirectly out of, incident to, or connected with the work or services to be performed by the WILDCAT under the Brokerage Agreement. Rodi's indemnity obligations to Fieldwood were without regard to Fieldwood's own negligence, fault, or breach of contract. Accordingly, Rodi is obligated to defend and indemnify Fieldwood from Rodi's third party complaint in which pleading Rodi seeks to recover contractual indemnity from Fieldwood for the personal injury claims of the passengers employed by Fieldwood arising out of the Allision of the WILDCAT with a stationary platform.

The Brokerage Agreement also contained litigation costs provisions which obligated Rodi to reimburse Fieldwood for the attorney's fees and costs incurred by Fieldwood in the defense of Rodi's third party complaint as well as in Fieldwood's pursuit of defense and

indemnity from Rodi.  Fieldwood submits that the quantum of those attorney's fees and costs can either be resolved through settlement between Rodi and Fieldwood or through a motion to tax costs and fees at the appropriate time.

## STATEMENT OF UNCONTESTED MATERIAL FACTS

On May 6, 2014, Rodi, designated as "Operator", and Kilgore Marine Services, L.L.C. (hereafter "Kilgore"), designated as "Broker" executed a Brokerage Agreement, a true and correct copy of which is attached as Exhibit 1 to Fieldwood's Statement of Uncontested Material Facts filed this date.  Pursuant to the Brokerage Agreement, Rodi appointed Kilgore as Rodi's agent for obtaining charters or similar work contracts for Rodi's vessels.  (Exh. 1, Brokerage Agreement, p. 1, art.1.)  As set forth in the Brokerage Agreement, Kilgore acted at all times as the broker of the M/V WILDCAT.  (Exh. 1, Brokerage Agreement, p. 1, art.1; Doc 5, Third Party Complaint, p. 5, para. 8.)

The Brokerage Agreement further provided as concerns the existence of master time charter parties:

> It is understood that in consideration of procuring work for [Rodi's] vessel, Charterer may require that a Master Time or similar charter be in place between [Kilgore] and Charterer, and that the charter of [Rodi's] vessel will be controlled by the Time Charter.  [Rodi] agrees to assume any and all obligations which [Kilgore] has assumed in any such Time Charter including, but not limited to, all defense and indemnity and insurance procurement obligations.

(Exh. 1, Brokerage Agreement, p. 2, art. 2.)

Article 5 of the Brokerage Agreement states as follows:

[Rodi] agrees to protect, defend, and indemnify and safe harmless Broker Group for, from and against [1] <u>any and all claims, demands, causes of action and liabilities of every kind and character, whether to person or property (including, but not limited to personal injury</u>, death, property damage or loss, <u>economic damages</u>, costs of litigation and attorneys' fees), <u>without limit and</u> [2] <u>without regard to the cause or causes thereof or the alleged</u>, actual, passive, primary and/or secondary negligence, <u>breach of</u> warranty or <u>contract</u>, fault or

> unseaworthiness <u>of Broker Group</u> and/or any other person or entity, and [3] <u>whether brought or presented by [Rodi]</u> or by an employee, servant, and/or agent of [Rodi], and/or any contractor, sub-contractor, invitee, vendor or client of [Rodi] and/or their employees, servants or, agents, arising directly or indirectly out of, incident to, and/or connected with (i) [4] <u>the work and/or services to be performed under this agreement</u>, and/or (ii) [Rodi's] failure to honor any of the obligations set forth in Section 2(B) of this agreement.
>
> * * *
>
> In addition, [Rodi] shall reimburse Broker Group for any court costs, <u>attorney's fees or any other expenses incurred in pursuit</u> or enforcement of these defense, indemnity or insurance obligations.

(*Id*., p. 3, art. 5) (emphasis and bracketed numbering added).

Effective January 1, 2014, Kilgore and Fieldwood executed a Master Time Charter Agreement (hereafter "Time Charter"), a copy of which is attached as Exhibit 2 to Fieldwood's Statement of Uncontested Material Facts. Paragraph 2 of the Time Charter envisioned Kilgore acting as a broker for the vessels Fieldwood would potentially decide in the future to charter under the terms and conditions of the Time Charter, as follows:

> This Agreement does not obligate [Kilgore] to charter its vessels to [Fieldwood], nor does it obligate [Fieldwood] to hire <u>any vessel or vessels</u> owned, <u>brokered</u>, or chartered <u>by [Kilgore]</u>, but it, together with any Short Form between [Kilgore] and [Fieldwood] dated subsequent to the Effective Date, shall govern the respective rights and duties of [Kilgore] and [Fieldwood] with respect to the charter of [Kilgore's] vessels by [Fieldwood].

(Exh. 2, Time Charter, pp. 1 – 2, para. 2.)

The Brokerage Agreement granted Kilgore authority, as broker, to provide the WILDCAT to Fieldwood for its use as time charterer of the WILDCAT pursuant to the Time Charter. (*Id*., p. 1, para. 1.)

The Brokerage Agreement defined the term "Charterer" as "any customer for whom the vessel will be working". (*Id*.) Additionally, the Brokerage Agreement defined the term "Broker Group" as including Kilgore, and "any Charterer or customer for whom work is to be

performed." (*Id.*) The M/V WILDCAT was working for Fieldwood on or about April 18, 2017, when the M/V WILDCAT allided with a platform in the Gulf of Mexico. (Doc. 5, Third Party Complaint, p. 5, para. 8; Doc. 19, Answer and Affirmative Defenses to Third Party Complaint, p. 5, para. 8.) Accordingly, Fieldwood was a member of the Broker Group. (Exh. 1, Brokerage Agreement, p. 1, para. 1.)

Under the first unnumbered paragraph of Paragraph 5 of the Brokerage Agreement, Rodi agreed to defend Fieldwood from any and all claims, demands and causes of action for personal injury as long as those personal injury claims arose directly or indirectly out of, incident to, and/or connected with the work and/or services to be performed under the Brokerage Agreement. Personal injury claims were filed in Rodi's limitation proceeding by the following individuals: Antonio Smith (Doc. 4, para. I(1) – "Claimant suffered severe bodily injuries"), Shawn Philbeck (Doc. 8, para. I – "Shawn Philbeck . . . sustained injuries"), and Lionel Every Jr. (Doc. 12, para. III(3.1) – "Claimant sustained severe and disabling injuries"). Rodi has settled the personal injury claims of the other passengers. To the extent Rodi has settled or is found liable to the passengers it likewise will experience an "economic loss" also within the scope of its indemnity agreement. On April 17 and 18, 2017, the M/V WILDCAT was working and performing services pursuant to both the Brokerage Agreement and the Time Charter. (Doc. 5, Third Party Complaint, p. 5, para. 8; Doc. 19, Answer and Affirmative Defenses to Third Party Complaint, p. 5, para. 8.)

In its third party complaint, Rodi attempted to transfer its liability including any and all economic losses for the foregoing personal injury claims of Messrs. Smith, Philbeck, Every and the other passengers indirectly to Fieldwood pursuant to the contractual defense and indemnity provisions of the Time Charter. However, Rodi's indemnity obligations were broad, without

limit and without regard to the negligence, fault, unseaworthiness or breach of contract of Fieldwood. (Exh. 1, Brokerage Agreement, para. 5.) Moreover, Rodi's indemnity obligations for personal injury claims were without regard as to whether Rodi brought those claims against Broker Group – as it did in Rodi's third party complaint against Fieldwood. Accordingly, Rodi must defend and indemnify Fieldwood from Rodi's third party complaint, as well as reimburse Fieldwood the costs incurred in the defense of Rodi's third party complaint as well as in the pursuit of indemnity from Rodi.

## LAW AND ARGUMENT

### I.   The Standard for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure requires the entry of summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Priester v. Lowndes Co.*, 354 F.3d 414, 419 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004); Fed. R. Civ. P. 56(a). The Court's interpretation of a contract, including a contractual indemnity provision, raises purely legal questions and thus are proper for resolution by summary judgment. *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 348 (5th Cir. 2015).

It is settled Fifth Circuit jurisprudence:

> A maritime contract . . . whether governed by federal maritime law or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous. … Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties. … Where the written instrument is so worded that it can be given a definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law.

*LLOG Expl. Co. v. Signet Maritime Corp.*, 673 Fed. Appx. 422, 425 (5th Cir. 2016) (internal citations omitted). Similarly, "[u]nder federal maritime law, a court may not look beyond the

written language of a contract to determine the intent of the parties unless the disputed contract provision is ambiguous." *International Marine, L.L.C. v. FDT, L.L.C*., 619 Fed. Appx. 342, 349 (5th Cir. 2015).

## II. The Time Charter and the Brokerage Agreement are Maritime Contracts Interpreted in Accordance with the General Maritime Law.

It is settled law that the time charter of a vessel is a maritime contract. *Bourg v. Chevron U.S.A. Inc*., 91 F.3d 141, 142 (5th Cir. 1996); *Fontenot v. Mesa Petroleum Co*., 791 F.2d 1207, 1214 (5th Cir. 1986). Accordingly, the Time Charter is a maritime contract. *Ibid*.

In the Brokerage Agreement, Rodi appointed Kilgore Marine as its agent for the purposes of chartering Rodi's vessels. (Kilgore Exh. 1, Brokerage Agreement, art. 1.) The U.S. Supreme Court also has clarified that agency contracts related to vessels or their use are maritime contracts. *Exxon Corp. v. Central Gulf Lines, Inc*., 500 U.S. 603, 612 – 13, 111 S. Ct. 2071, 2077 (1991). "In determining whether a contract falls within admiralty, the true criterion is the nature and subject matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions." *Id*. at 610 & 612, 111 S.Ct. at 2076. See also *Norfolk S. Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 23 – 24, 125 S. Ct. 385, 393 (2004). In resolving whether Exxon's agency agreement with another company to supply marine fuel / bunkers on Exxon's behalf to Central Gulf's vessel in Saudi Arabia was maritime, the Supreme Court compared that scenario with Exxon's direct supply of marine fuel / bunkers in New York to a Central Gulf vessel, which clearly was a maritime transaction within the Court's admiralty jurisdiction. "Because the nature and subject-matter of the two transactions are the same as they relate to maritime commerce, if admiralty jurisdiction extends to one, it must extend to the other." *Exxon Corp*. at 613, 111 S. Ct. at 2077.

The rationale of the *Exxon* decision compels the same result here as concerns the

Brokerage Agreement. Had Rodi directly time chartered its vessel to Fieldwood that contract unquestionably would have been a maritime contract within the Court's maritime jurisdiction because "an agreement to transport people and supplies in a vessel to and from a well site on navigable waters is clearly a maritime contract." *Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 877 (5th Cir. 2005). Here, Rodi's appointment of Kilgore Marine as its agent for the purpose of chartering Rodi's vessels achieved the same result – the chartering of Rodi's vessel, WILDCAT to Fieldwood. "Because the nature and subject-matter of the two transactions are the same as they relate to maritime commerce, if admiralty jurisdiction extends to one, it must extend to the other." *Exxon Corp.* at 613, 111 S. Ct. at 2077. Moreover, the district court in *BDL Int'l v. Sodetal U.S.A. Inc.*, 377 F. Supp. 2d 518, 523 – 25 (D.S.C. 2005), the district court concluded that a contract for brokerage services to facilitate the ocean transportation of goods comprised maritime contracts. Accordingly, the Brokerage Agreement is a maritime contract.

Because the Brokerage Agreement is a maritime contract, it is governed by and interpreted in accordance with the general maritime law. *In re Crescent Energy Services, L.L.C.*, _____ F.3d _____, 2018 WL 3420665 at *4 (5th Cir. 2018).

**III. Rodi Owes Fieldwood Defense and Indemnity from Rodi's Third Party Complaint.**

The Fifth Circuit provided the following instructions when interpreting contractual provisions:

> Federal courts sitting in admiralty adhere to the axiom that a contract should be interpreted so as to give meaning to all of its terms – presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous. … [A]n interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable.

*Foster Wheeler Energy Corp. v. AN NING JIANG M/V*, 383 F.3d 349, 354-58 (5th Cir. 2004).

In this instance, Rodi agreed to defend and indemnify the Broker Group,[1] from and against any and all claims, demands, causes of action and liabilities of every kind and character, including but not limited to personal injury or economic damages brought or presented by Rodi <u>arising directly or indirectly out of, incident to, and/or connected with</u> the work and/or services to be performed under this agreement.  (emphasis added).  The Fifth Circuit has given broad interpretation to indemnity agreements that contain "arising in connection herewith" or similar language.  *Fontenot*, *supra*, 791 F.2d at 124; *Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238, 1241 (5th Cir. 1980), *reh'g denied*, 636 F.2d 314 & 315 (5th Cir. 1981).  "Indemnity provisions that contain language similar to ['arising in connection herewith'] 'unambiguously encompass all activities reasonably incident or anticipated by the principal activity of the contract.'"  *Ibid*.

Rodi executed the Brokerage Agreement, which appointed Kilgore Marine as Rodi's agent to obtain charters for Rodi's vessels, which is what Kilgore Marine did for the WILDCAT as concerns Fieldwood.  The claims of the Fieldwood passengers asserted against Rodi are based on the personal injuries they sustained as a result of the Allision while they were on board the WILDCAT, the vessel that was provided under the Time Charter that Kilgore obtained, in part, for Rodi's benefit.  Therefore, except for Kilgore Marine executing the Brokerage Agreement with Rodi, the WILDCAT would not have been present at the site of the Allision, the passengers would not have been allegedly injured, and Rodi would not be seeking indemnity from Fieldwood.  Accordingly, Rodi's third party complaint against Fieldwood for contractual indemnity from the personal injury claims of the passengers arises directly and indirectly out of,

---

[1] There is no dispute that Fieldwood is Kilgore Marine's customer as well as the Charterer of the M/V WILDCAT. (Exh. 1, Brokerage Agreement, p. 1, para. 1; Exh. 2, Time Charter; Doc. 5, Third Party Complaint, p. 5, para. 8; Doc. 19, Answer and Affirmative Defenses to Third Party Complaint, p. 3, para. 8.)  Accordingly, it is undisputed that Fieldwood is a member of the Broker Group.

incident to and connected with the work and services Rodi performed under the Brokerage Agreement.

It is also undisputed that Rodi's indemnification obligations were without regard to the negligence, fault, unseaworthiness or breach of contract of Fieldwood. This unequivocally provides Fieldwood with indemnity for its own negligence and fault. See e.g., *One Beacon Ins. Co. v. Crowley Marine Servs., Inc*., 648 F.3d 258, 270 (5th Cir. 2011); *Theriot v. Bay Drilling Corp*., 783 F.2d 527, 540 (5th Cir. 1986). Moreover, Rodi expressly agreed to indemnify Fieldwood from Fieldwood's liabilities to Rodi for Fieldwood's breach of contract, including its alleged indemnity obligations in the Time Charter. See, e.g., *Sumrall v. Ensco Offshore Co*., 291 F.3d 316, 319 (5th Cir. 2002); *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981).

As discussed at the outset, Judge Zainey in the *Knox* decision, concluded under identical contractual relationships among Bisso, Kilgore Marine and REC, that REC's cross-claim against Bisso for contractual indemnity and tort-based contribution were effectively waived by REC's contractual indemnity obligations in Paragraph 5 of its brokerage agreement with Kilgore Marine.[2]

Like Fieldwood in the instant case, Bisso had executed a master time charter with Kilgore Marine. Kilgore Marine executed a brokerage agreement with REC. Pursuant to the brokerage agreement, REC provided the MS JANE to work for Bisso under the time charter between Bisso and Kilgore Marine. The underlying dispute involved the personal injury claim of Knox, a Coastal Towing employee, who was injured during a personnel basket transfer from Bisso's vessel, the MIGHTY CHIEF, to REC's vessel, the MS JANE.

---

[2] Fieldwood has attached as Appendix I to this memorandum the Brokerage Agreement between Kilgore Marine and REC. The indemnity obligations of REC are identical to those of Rodi in the instant case.

Judge Zainey granted Bisso's motion for summary judgment which sought the dismissal of REC's cross claim against Bisso as follows:

> Bisso moves for summary judgment against REC on the cross claims for contribution and contractual indemnity that REC has asserted against Bisso in conjunction with Knox's claim. Bisso argues that REC contractually waived these claims as part of its brokerage agreement with Kilgore.
>
> Bisso's motion is grounded on Section 5 of the Kilgore-REC brokerage agreement. <u>The Court need not recite the lengthy section in full because it is clear that if Section 5 applies, it constitutes a contractual waiver of REC's claims (whether for tort contribution or contractual indemnity) against Bisso under the circumstances of this case</u>.
>
> \*\*\*
>
> The Court is persuaded that REC contractually waived the very claims it now asserts against Bisso and that this aspect of Bisso's motion for summary judgment must be GRANTED.

*Knox*, 2017 WL 2098876 at \*3 (emphasis added).

For the same reasons, this Court should conclude that Rodi is obligated to defend and indemnify Fieldwood from the Rodi third party complaint in which Rodi seeks contractual defense and indemnity from Fieldwood.

### IV. Rodi Owes Fieldwood Attorney's Fees Incurred in the Defense of Rodi's Third Party Complaint as well as in Pursuit of Defense and Indemnity from Rodi.

The first unnumbered paragraph of Article 5 of the Brokerage Agreement provides that Rodi shall defend and indemnify Fieldwood from all costs of litigation and attorney's fees. The third unnumbered paragraph of Article 5 expressly provides that Rodi shall reimburse Fieldwood for all attorney's fees and costs incurred in pursuing the defense and indemnity obligations from Rodi. See *Royal Exch. Assur. Co. v. M/V GULF FLEET No. 54*, 1991 WL 99406 (E.D. La. 1991). Accordingly, Fieldwood is entitled to partial summary judgment declaring that Rodi must reimburse Fieldwood from all attorney's fees and costs incurred by Fieldwood not only in the

defense of Rodi's third party complaint but also in pursuit of defense and indemnity from Rodi.

Fieldwood submits that the quantum of the amount to be reimbursed Fieldwood would be resolved either through settlement between the parties or upon the filing of a formal motion to assess attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, Fieldwood Energy LLC requests this Court grant this motion, and enter an Order declaring that Rodi Marine, L.L.C. owes Fieldwood defense and indemnity from the claims asserted by Rodi in its third party complaint against Fieldwood, including all attorney's fees and costs incurred by Fieldwood in the defense of Rodi's claims as well as in the pursuit of indemnity from Rodi.

Respectfully submitted:

/s/ James D. Bercaw
James D. Bercaw, T.A. (20492)
**KING & JURGENS, L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
Email: jbercaw@kingkrebs.com

*Counsel for Claimant / Third Party Defendant, Fieldwood Energy LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ James D. Bercaw