## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE | § | CIVIL ACTION NO. 2:17-CV-5394 |
| COMPLAINT OF RODI MARINE, LLC, | § | |
| AS OWNER AND OPERATOR OF THE | § | JUDGE MORGAN |
| M/V WILDCAT, PETITIONING FOR | § | |
| EXONERATION FROM OR | § | MAGISTRATE JUDGE NORTH |
| LIMITATION OF LIABILITY | § | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT DECLARING RODI MARINE, LLC
<u>OWES FIELDWOOD ENERGY LLC DEFENSE AND INDEMNITY</u>**

James D. Bercaw, T.A. (20492)
**KING & JURGENS, L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-3800
Facsimile:  (504) 582-1233
Email: jbercaw@kingkrebs.com

*Counsel for Claimant / Third Party
Defendant, Fieldwood Energy LLC*

MAY IT PLEASE THE COURT:

Claimant / third party defendant, Fieldwood Energy LLC ("Fieldwood"), files this reply memorandum in support of its motion for a partial summary judgment declaring that plaintiff-in-limitation / third party plaintiff, Rodi Marine, LLC ("Rodi"), owes Fieldwood defense and indemnity from Rodi's third party complaint (Doc. 5) filed against Fieldwood.  As confirmed by Rodi's Response to Fieldwood's Statement of Uncontested Facts (Doc. 65-1), there are no genuine issues of material fact concerning Fieldwood's motion.  Moreover, the parties agree that the general maritime law provides the applicable substantive law to interpret Rodi's Brokerage Agreement[1] with Kilgore Marine Services, L.L.C. ("Kilgore") as well as Kilgore's Master Time Charter Agreement ("Time Charter")[2] with Fieldwood.  Accordingly, Fieldwood requests this Court to enter a partial summary judgment declaring that pursuant to the Brokerage Agreement, Rodi owes Fieldwood defense and indemnity for the claims asserted by Rodi in its third party complaint against Fieldwood, including all attorney's fees incurred by Fieldwood in the defense of Rodi's claims and in the pursuit of indemnity from Rodi, as well as all costs of these proceedings.

I.     **Summary Judgment in Favor of Fieldwood is Procedurally Proper.**

Both Fieldwood and Rodi have filed motions for partial summary judgment concerning the indemnity provisions of two maritime contracts, the Brokerage Agreement and the Time Charter.  Where there are no disputed issues of material fact, cross motions concerning indemnity provisions in maritime contracts are routinely resolved *via* summary judgment in favor of one of the movants.  *In re Crescent Energy Servs., LLC*, 896 F.3d 350 (5th Cir. 2018); *Baloney v. Ensco Offshore Co.*, 570 Fed. Appx. 423 (5th Cir. 2014).  See also *In re Y&S Marine,*

---

[1]     See Doc. 58-1, Memorandum in Support of Motion for Partial Summary Judgment Declaring Rodi Marine, LLC Owes Fieldwood Energy LLC Defense and Indemnity, hereafter "Fieldwood Orig. Memo.", pp. 10 – 11.

[2]     See, e.g., *Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 877 (5th Cir. 2005).

*Inc.*, 2013 WL 3874883 (E.D. La. 2013) (Morgan, J.).   As concerns Fieldwood's motion for partial summary judgment, there are no issues of material fact, and the Court is merely required to interpret the provisions of Paragraph 5 of the Brokerage Agreement.[3]

Rodi's initial defense is that Fieldwood did not sufficiently plead its entitlement to contractual indemnity pursuant to the Brokerage Agreement in accordance with the Supreme Court decision of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).   Yet, Rodi did not file a motion to dismiss Fieldwood's Claim for failure to state a claim under Rule 12(b)(6), a motion for more definite statement under Rule 12(e), or a motion for judgment on the pleadings under Rule 12(c).   Instead, Rodi has taken the unusual tack of arguing Fieldwood somehow is barred at this time from filing a motion for partial summary judgment as per the indemnity provisions of the Brokerage Agreement, ostensibly because Rodi lacked "notice". (Doc. 56, p. 2.)   Except for a passing reference to *Twombly*, Rodi has cited no authority in support of its argument that Fieldwood cannot proceed with its motion.

The issue in *Twombly* was whether that complaint contained enough facts to suggest an illegal agreement and thereby state a cause of action for violation of the Sherman Anti-Trust Act, i.e., plausible grounds.   "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise <u>a reasonable expectation that discovery will reveal evidence</u> of illegal agreement."   *Twombly* at 556, 127 S. Ct. at 1965 (emphasis added).   Fieldwood's allegations concerning its claim for <u>contractual indemnity</u> provided plausible grounds to infer the existence of a contract containing an

---

[3]       In contrast to Fieldwood's motion, there are numerous issues of material fact concerning Rodi's motion for partial summary judgment (Doc. 50):  (1) the lack of evidence of Rodi's membership in "Owner Group" of the Time Charter as well as (2) the substantial evidence of gross negligence of the master and deckhand who were supposed to be on duty of the M/V WILDCAT, either one of which renders summary judgment procedurally improper.

indemnity clause.  In its July 26, 2017, discovery responses,[4] Rodi produced the Brokerage Agreement which contains the indemnity provision at issue in Fieldwood's Claim and motion.

It is difficult to understand Rodi's purported "surprise" and "lack of notice" when Rodi had disclosed the Brokerage Agreement over a month before Fieldwood filed its Claim for contractual indemnity.  Rodi's defense is further undermined by Rodi's admission of all of Fieldwood's proffered material facts (Doc. 65-1), rendering summary judgment procedurally proper.

Nevertheless, to the extent the Court requires Fieldwood to more specifically allege the factual basis of its contractual indemnity claim, Fieldwood would request leave to supplement its Claim with the same fifteen (15) statements of fact set forth in its Statement of Uncontested Material Fact filed with the Court, all of which were admitted by Rodi.  Such a procedural step should be unnecessary under the circumstances.

## II.     Rodi Agreed to Indemnify Fieldwood from Rodi's Claims for Breach of Contract.

The Fifth Circuit provided the following instructions when interpreting contractual provisions:

> Federal courts sitting in admiralty adhere to the axiom that a contract should be interpreted so as to give meaning to all of its terms – presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous. … [A]n interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable.

*Foster Wheeler Energy Corp. v. AN NING JIANG M/V*, 383 F.3d 349, 354-58 (5th Cir. 2004).

Article 5 of the Brokerage Agreement states as follows:

---

[4]      On July 26, 2017, Rodi forwarded its responses to the Requests for Production of Documents of claimant, Antonio Smith, a copy of which is attached as Exhibit A.  In Response to Request No. 2, Rodi produced the Brokerage Agreement at issue.  (Exh A, p. 2, Resp. to Req. No. 2.)  Fieldwood attached the same Brokerage Agreement (Doc. 58-4) as Exhibit 1 to its Statement of Uncontested Material Facts, that Rodi had previously attached to its discovery responses, both of which bear the same Bates numbering: Rodi – 0147-49.

[Rodi] agrees to protect, defend, and indemnify and safe harmless Broker Group for, from and against [1] <u>any and all claims, demands, causes of action and liabilities of every kind and character, whether to person or property (including, but not limited to personal injury</u>, death, property damage or loss, <u>economic damages</u>, costs of litigation and attorneys' fees), <u>without limit and</u> [2] <u>without regard to</u> the cause or causes thereof or <u>the alleged</u>, actual, passive, primary and/or secondary negligence, <u>breach of</u> warranty or <u>contract</u>, fault or unseaworthiness <u>of Broker Group</u> and/or any other person or entity, and [3] <u>whether brought or presented by [Rodi]</u> or by an employee, servant, and/or agent of [Rodi], and/or any contractor, sub-contractor, invitee, vendor or client of [Rodi] and/or their employees, servants or, agents, arising directly or indirectly out of, incident to, and/or connected with (i) [4] <u>the work and/or services to be performed under this agreement</u>, and/or (ii) [Rodi's] failure to honor any of the obligations set forth in Section 2(B) of this agreement.

(Doc. 58-4, Brokerage Agreement, p. 3, art. 5) (emphasis and bracketed numbering added).

The undisputed facts concerning Rodi's third party complaint against Fieldwood (in which Rodi as asserted its own claim for contractual defense and indemnity against Fieldwood for the personal injury claims of the Fieldwood passengers of the M/V WILDCAT) satisfy all four of the bracketed numbers inserted by Fieldwood into Article 5 of the Brokerage Agreement. The third party complaint comprises [1] a claim / demand of every kind and nature (including the personal injury and economic damage claims of the Fieldwood passengers) against Fieldwood for [2] Fieldwood's alleged breach of the indemnity provisions of the Time Charter (i.e., the alleged … breach of … contract) [3] brought or presented by [Rodi] arising directly or indirectly out of, incident to and/or connected with [4] the work or services to be performed under the Brokerage Agreement.

It is undisputed that Fieldwood was a member of the Broker Group.[5]   The M/V WILDCAT was working for Fieldwood on or about April 18, 2017, when the M/V WILDCAT allided with a platform in the Gulf of Mexico.[6]   It is likewise undisputed that on April 17 and 18, 2017, the M/V WILDCAT was working and performing services by virtue of the Brokerage

---

[5]       *Compare* Doc. 58-3, no. 12 *with* Doc. 65-1, no. 12.
[6]       *Compare* Doc. 58-3, no. 11 *with* Doc. 65-1, no. 11.

Agreement.[7]

Rodi spends a substantial portion of its argument addressing whether Paragraph 5, including its provision extending Rodi's indemnity obligations to breach of contract by Fieldwood, somehow should not apply to Rodi's claim for contractual indemnity against Fieldwood pursuant to the Time Charter.  The jurisprudence indicates that Fieldwood's potential indemnity obligations to Rodi in the Time Charter are included within Rodi's indemnity obligations to Fieldwood in the Brokerage Agreement.

In *Corbitt v. Diamond M Drilling Co*., 654 F.2d 329, 334 (5th Cir. Unit A 1981), the Fifth Circuit set forth the following analysis as to whether the parties intended to require the indemnitor to indemnify the indemnitee from the indemnitee's obligations to indemnify another.

> The contract need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities.  We hold only that it must clearly express such a purpose.

*Id*. at 334.  Because the indemnity provision at issue in *Corbitt* did not include the words "contract", "contractual" or otherwise demonstrate an intention for Sladco to indemnify Shell from Shell's breach of contract to Diamond M, Sladco was not required to indemnify Shell from Shell's separate indemnity obligations to Diamond M.

In *Sumrall v. Ensco Offshore Co*., 291 F.3d 316 (5th Cir. 2002), the Fifth Circuit concluded that an indemnity provision required Premiere to defend and indemnify Santa Fe from Santa Fe's indemnity obligations to Ensco for the personal injury suit Sumrall filed against Ensco.  Like the Brokerage Agreement here, Premiere owed Santa Fe indemnification for bodily injury or death claims.  *Id*. at 320.  However, Premiere's indemnity obligation extended to Santa Fe's obligations whether arising "in tort or contract", a key distinction from *Corbitt*.  *Id*.  The Fifth Circuit also noted that Premiere's indemnity obligations "includes additional, rather

---

[7]      *Compare* Doc. 58-3, no. 15 *with* Doc. 65-1, no. 15.

expansive, language that broadens Santa Fe's entitlement to indemnification for 'all claims … of whatsoever nature or character … whether or not caused by the legal duty of Santa Fe.'"  *Id*. The Court concluded that its reasoning in "*Corbitt* suggests that Premiere owes indemnification to Santa Fe in the instant case for Santa Fe's contractual or legal duty to indemnify Ensco against Sumrall's injury claim." *Id*.

Similarly, the district court in *Energy XXI, GOM, LLC v. New Tech Eng'g, L.P*., 787 F. Supp. 2d 590 (S.D. Tex. 2011), cited by Rodi in its memorandum in support of its own motion for summary judgment (Doc. 50-1, pp. 9-10), rejected Energy XXI's argument that its breach of contract claims against New Tech were not included in Energy XXI's indemnity obligations to New Tech because that indemnity provision did not contain the phrase "breach of contract".

> With regard to Energy XXI's first argument, under maritime law, the "contract need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities." *Corbitt*, 654 F.2d at 334.  The contract simply "must clearly express such a purpose". *Id*.  <u>The Indemnity Clause does not contain the words "breach of contract", but it does expressly state that it covers "any and all such claims, demands, losses, or suits, (including but not limited to, claims, demands or suits for property damage …) which may be brought against [New Tech] by Energy XXI</u> … in anywise arising out of or incident to work being performed on or about Energy XXI's property or jobsite."  It is without question that the breach of contract claim arises out of work being performed at Energy XXI's jobsite.  Thus, the language in the Indemnity Clause is broad enough to encompass contractual obligations.

*Id*. at 606 (emphasis added).

The *Energy XXI* court drew additional support for its conclusion that Energy XXI's breach of contract claims against New Tech fell within the scope of Energy XXI's indemnity obligations based on the inclusion of expansive phrasing as concerns the nature of the claims for which Energy XXI agreed to indemnify New Tech.  While the Indemnity Clause did not include the modifier of claims "of whatsoever nature or character", it did require indemnification by Energy XXI "without limitation whatsoever."  *Id*. at 607.  For that reason as well, that court

concluded Energy XXI had to indemnify New Tech from Energy XXI's breach of contract claims.

Judge Zainey's decision in *Knox v. Bisso Marine, LLC*, 2017 WL 2098876 (E.D. La. 2017) (Zainey, J.), *aff'd on other grounds*, 716 Fed. Appx. 370 (5th Cir. 2018) is entirely consistent with the *Sumrall* and *Energy XXI* decisions.   Like Rodi here, REC claimed it was entitled to defense and indemnity from Bisso for the personal injury claims of Knox, a Coastal Tug employee, in accordance with the indemnity provisions of the time charter between Bisso and Kilgore, for which REC had filed a cross claim, in part, for contractual indemnity against Bisso.   Bisso, in turn, filed a motion for summary judgment against REC to enforce the identical provisions of Paragraph 5 of a Brokerage Agreement between REC and Kilgore.   In granting summary judgment in favor of Bisso, based on Paragraph 5, this court concluded "REC contractually waived the very claims that it now asserts against Bisso."   *Id*. at *3.

The indemnity provisions of Paragraph 5 of the Brokerage Agreement should be interpreted similarly to that in *Sumrall*, *Energy XXI* and *Knox*.   Like *Sumrall*, and in contrast to *Energy XXI*, Rodi agreed to indemnify Fieldwood for claims Rodi brought for breach of contract, such as Rodi's third party complaint against Fieldwood for contractual indemnity.   Yet, as in both *Sumrall* and *Energy XXI*, the claims for which Rodi agreed to defend Fieldwood from included not only personal injury claims, but also "any and all claims, demands, causes of action and liabilities of every kind and character" … "without limit".   When the phrases "breach of … contract", "any and all claims, demands, causes of action and liabilities of every kind and character", and "without limit" are given effect, in accordance with *Corbitt*, *Sumrall* and *Energy XXI*, it is clear that Rodi is obligated to defend and indemnify Fieldwood from "the very claims that it now asserts against" Fieldwood.   *Knox*, *supra*.

In its opposition memorandum Rodi initially ignores completely the phrase "breach of warranty or contract" in the Brokerage Agreement.  Then, Rodi implausibly suggests that "breach of warranty or contract" are, in reality, tort-based claims, not contract-based claims, despite the clear established meanings of warranty and contract.  It is settled that warranty is a contract doctrine under admiralty law.  *St. James Stevedoring Partners, LLC v. Motion Navigation Ltd.*, 2014 WL 3892178 at \*15 (E.D. La. 2014) (Lemmon, J.).  See also *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 896 F. Supp. 2d 582, 600 (S.D. Tex. 2012) (Warranty law is a subset of contract law under the general maritime law.).  The inclusion of those clearly defined set of contract-based claims along with a list of tort-based claims is remarkably similar to the indemnity provision in *Sumrall*, which pertained to claims whether in tort or in contract. *Sumrall*, 291 F.3d at 320.

Later on, Rodi disregards the Fifth Circuit's admonishment in *Corbitt* – the contract need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities – and thereafter submits alternative language Rodi suggests are acceptable.  For example, Rodi prefers the terms "waiver" or "release".  Fieldwood agrees that enforcement of Paragraph 5 of the Brokerage Agreement will require Rodi to indemnify Fieldwood from Rodi's own third party complaint.  This Court in *Y&S Marine* and *Knox* as well as the court in *Energy XXI* had no trouble reaching similar results under nearly identical contract provisions.  As this Court pointed out in *Y&S Marine, Inc.*, "If this is a technical answer because the practical effect of granting indemnity will be to release Y&S, it is worth noting that Harvest's objection is a technical one."  *Y&S Marine*, 2013 WL 3874883 at \*8, n. 39 (emphasis added). See also *Knox* at \*3 (in Paragraph 5 of the Brokerage Agreement "REC contractually waived the very claims that it now asserts against Bisso") (emphasis added).

Rodi suggests its indemnity obligations to Fieldwood in the Brokerage Agreement are similar to its purported indemnity obligations in the Time Charter. This is incorrect on its face. Rodi owes no indemnity obligations to Fieldwood by operation of the Time Charter. Rather, Kilgore, as Owner, owes Fieldwood indemnity under the Time Charter. (Doc. 58 − 5, Time Charter, para. 12(b)(i).) It is only through paragraph 2(B) of the Brokerage Agreement that Rodi has expressly assumed whatever indemnity obligations Kilgore has promised to Fieldwood in the Time Charter, for which Rodi has further agreed to defend and indemnify Broker (Kilgore) from Fieldwood's indemnity demands, again "without limit and … without regard to the … alleged breach of warranty or contract … of Broker Group". (Doc. 58 − 4, Brokerage Agreement, para. 2(B).)

Similar to REC in the *Knox* decision, Rodi has argued that Paragraph 2(B) of the Brokerage Agreement means the indemnity provisions of the Time Charter control and have priority over the indemnity provisions in Paragraph 5 of the Brokerage Agreement. In an attempt to draw support from the Time Charter, Rodi discusses the Merger Clause of Paragraph 30 of the Time Charter. (Doc. 58-5, Time Charter, p. 16 of 19, para. 30.) The merger clause however merely confirms that all prior communications, understandings, and agreements between the Parties to the Time Charter are superseded and merged into the Time Charter, thereby rendering inadmissible any parole evidence. *Har-Win, Inc. v. Consolidated Grain & Barge Co*., 794 F.2d 985, 987 (5th Cir. 1986); *Stewart v. Grand Isle Shipyard, Inc*., 2011 WL 6778804 (E.D. La. 2011). The Time Charter does not state that it has priority over "any other agreement",[8] just prior agreements between the Parties.

The term "Parties" is defined to mean only Fieldwood and Kilgore. (Doc. 58-5, Time Charter, p. 1 of 19, prefatory para.) Rodi is neither a Party nor referenced by name in the Time

---

[8]        Contra Doc. 65, p. 3 ("The MTCA takes precedence over <u>any other agreement</u>.")

Charter.  Rather, Rodi is a purported third party beneficiary of Fieldwood's indemnity obligations to the "Owner Group", membership in such group Fieldwood denies Rodi qualifies. Similarly, Fieldwood is not a party to the Brokerage Agreement, but it undisputedly qualifies as a member of Broker Group, and thus a third party beneficiary of Rodi's indemnity obligations.

As prefaced, Rodi's argument concerning the alleged priority of the Time Charter's indemnity provisions was also raised by REC and rejected by this Court in *Knox*.  The interaction of Paragraph 2(B) and 5 of the Brokerage Agreement was explained:

> [T]he Court does not agree that Sections 2.B and 5 are in conflict, overlap, or create an ambiguity.  The provisions can be read in perfect harmony in exactly the manner Bisso suggests in its Reply:  In Section 5 REC agreed not to assert claims against Kilgore or any member of the Broker Group, which includes Bisso, *in addition to and not in lieu* of assuming any contractual obligations that Kilgore might be forced to assume in order to charter REC's vessels to third parties.  As Bisso points out, given that the express goal of the Kilgore-REC brokerage agreement was to charter REC's vessels to third parties, interpreting the interplay between Sections 5 and 2.B as REC suggests would render nugatory the very protections that Kilgore had in place for itself, which would be unreasonable.

*Knox* at *3 (italics in the original).

Rodi's arguments concerning its interpretation of Paragraph 5 of the Brokerage Agreement are contrary not only to the *Sumrall*, *Corbitt* and *Energy XXI* decisions interpreting similar indemnity provisions, but also to the *Knox* decision of Judge Zainey interpreting the exact same indemnity language of a Kilgore Brokerage Agreement.  The same result as *Knox* should occur as concerns Rodi's third party complaint against Fieldwood.

## CONCLUSION

Fieldwood requests this Court grant its motion for partial summary judgment, and enter an Order declaring that Rodi owes Fieldwood defense and indemnity from the claims asserted by Rodi in its third party complaint, including all attorney's fees and costs incurred by Fieldwood in the defense of Rodi's claims as well as in the pursuit of indemnity from Rodi.

Respectfully submitted:


_____/s/ James D. Bercaw_____
James D. Bercaw, T.A. (20492)
**KING & JURGENS, L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-3800
Facsimile:  (504) 582-1233
Email: jbercaw@kingkrebs.com

*Counsel for Claimant / Third Party Defendant,*
*Fieldwood Energy LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2018, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all

counsel of record.


_____/s/ James D. Bercaw_____