## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | * | CIVIL ACTION |
| OF RODI MARINE, LLC, AS | * | |
| OWNER AND OPERATOR | * | NO. 17-5394 |
| OF THE M/V WILDCAT | * | |
| PETITIONING FOR EXONERATION | * | SECTION: E(5) |
| FROM OR LIMITATION OF LIABILITY | * | |

*********************************************

### MEMORANDUM IN OPPOSITION TO RULE 12(B)(6) AND RULE 12 (B)( C) MOTION ON PUNITIVE DAMAGES

**MAY IT PLEASE THE COURT:**

Now comes Claimant, Antonio Smith, who for opposition to the Rule 12(b)(6) and Rule 12 ( c) Motion on Punitive Damages filed by Petitioners, Rodi Marine, LLC, Rodi Marine Management, LLC, and GJR Marine, LLC (Collectively "Rodi"), would respectfully aver as follows:

## I.    RELEVANT FACTS OF THE CASE

The instant limitation action arises from an allision that occurred on April 18, 2017 in the Gulf of Mexico between the M/V WILDCAT, a 55' foot aluminum offshore crewboat owned, manned and operated by Rodi, and a fixed gas platform, the Chevron South Timbalier 23-S. At the time of the allision, the M/V WILDCAT, through various contracts and agreements, was regularly providing supply and transportation services to employees of Fieldwood Energy, LLC, (Fieldwood) quartered and working on platforms in the Gulf. On 4/18/17, claimant, Antonio Smith, together with several other Fieldwood employees, was being transported aboard the M/V WILDCAT to shore, after a crew change. During the course of that ill-fated voyage, the vessel's captain left the wheelhouse, turning over the steerage and control of the vessel to the sole other occupant of the bridge, an unlicensed deckhand. While the captain was below deck, the deckhand fell asleep, failed

to make critical course corrections, and allowed the vessel to crash headlong into the Chevron platform while traveling at 20 knots.

Investigations conducted into the facts of the accident have revealed numerous acts of negligence, gross negligence, statutory violations and incompetence on the part of Rodi and its employees.  At trial, claimant's marine navigation expert will testify, in part, that:

1.  Maritime standards for fatigue prevention exist to decrease risk of collision/allision and injuries that accompany excessive work hours.  Rodi Marine failed in its responsibility to observe such standards to ensure that its unlicensed workers and captains were not overworked and thereby exposing themselves and their passengers to increased risk of collision/allision and increased risk of injury.

2.  The *Wildcat's* owners, managers, and captains increased their risk of allision because Rodi Marine: (A) allowed an unlicensed deckhand to operate the *Wildcat* while alone and unsupervised in the wheelhouse; and (B) did not install modern, commonly-used collision-avoidance bridge equipment.

3.  Lionel Every and Antonio Smith did nothing wrong and did not cause or contribute to their injury.

4.  The acts and omissions of the *Wildcat's* owners, managers, captains and deckhands did not meet federal maritime safety standards, internal company standards, and the safe standards of the maritime industry.  Their acts and omissions created the unsafe conditions that led to the allision and Lionel Every and Antonio Smith's injuries.

In light of the foregoing, Smith has asserted claims to recover punitive damages for the gross negligence and outrageous conduct of Rodi and its employees which caused and contributed to the allision, and to his damages.  Claimant asserts Rodi's Rule 12(b)(6) and Rule 12 ( c) Motion seeking to dismiss the punitive damage claims does not accurately state the law applicable to his claims, and that a correct analysis of this law supports a denial of Rodi's Motion.

## II.   RULE 12(B)(6) STANDARD

In a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept

all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. See *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc*., 949 F.2d 1384, 1386 (5th Cir.1991). The Court must resolve doubts as to the sufficiency of the claim in plaintiff's favor. *Vulcan Materials Company v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir.2001). Dismissal is warranted if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Id*.; *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995) (quoting Leffall v. Dallas Indep. Sch. Dist, 28 F.3d 521, 524 (5th Cir.1994)).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is viewed with disfavor and is rarely granted. *Lowrey v. Texas A&M Univ. Sys*., 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 – 46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). However, a plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F. 2d 278, 281 (5th Cir. 1992).  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007). *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## III.   LAW AND ARGUMENT

### A.   CLAIMANTS' RIGHTS TO RECOVER PUNITIVE DAMAGES ARE NOT RESTRICTED BY ANY LIMITATIONS IMPOSED BY THE JONES ACT, NOR ARE THEY LIMITED TO "NEGLIGENCE" CLAIMS UNDER THE LONGSHORE AND HARBOR WORKER'S COMPENSATION ACT

In its Memorandum, Rodi does not address the egregious conduct of Rodi and its employees as set forth above which caused and contributed to the allision.  It makes no argument against Smith's  punitive damage claims on the basis of any asserted lack of factual evidence to support a finding at trial of gross negligence and outrageous conduct[1]. Instead, Rodi asserts Smith, as a worker covered by the provisions of the Longshore and Harbor Worker's Compensation Act ("LHWCA") 33 U.S.C.  §  901, et seq., particularly 33 U.S.C § 905(b), is limited to "negligence" claims only, against vessel owners.  Rodi's Motion raises a defense to the punitive damage claims only **as a matter of law,** and the only issue before the Court is whether punitive/exemplary damages are available **as a matter of law.**

Rodi's argument in this regard is fundamentally flawed.  While  Smith may be a covered employee under the LWHCA, he has not pled any portion of the LHWCA as a basis for recovery against Rodi.  Instead, Claimant seeks damages under the admiralty and general maritime laws. Even should the Court determine the provisions of the LHWCA apply to his claims, Claimant asserts the LHWCA does not limit him to recovery of damages for  "negligence" only.  Instead, the provisions of the LHWCA encompass the admiralty and general maritime law duties of a vessel owner to passengers.  Under the admiralty and general maritime law, punitive damages can, and in the instant

---

[1]  Clearly, Claimant's pleadings have stated enough facts in support of a finding of gross negligence to rise far above the speculative or purely hypothetical level. *Bell Atl. Corp. v. Twombly*, supra

case, should be awarded to a passenger injured by the gross negligence of vessel owners, as was Claimant.

### B.     THE JONES ACT

Both parties agree Smith is not a seaman. In the majority of cases a seaman is a member of the crew of a vessel. The Supreme Court has held that "[t]he key to seaman status is employment-related connection to a vessel in navigation." *McDermott International, Inc. v. Wilander*, 498 U.S. 337 (1991). The Jones Act provides a seaman with a cause of action against his employer for injuries sustained as a result of his employer's negligence. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). A seaman may recover damages under the Jones Act if his employer's negligence was the legal cause, in whole or in part, of his injury. *Id*. Although the M/V WILDCAT was a vessel in navigation, Rodi was not Claimant's employer at the time of the incident. Further, Smith was not performing work aboard the M/V WILDCAT, and Claimant has not asserted a Jones Act claim against Rodi[2]. Therefore, the Jones Act is not the relevant legislation to be considered in determining whether Claimant's rights are limited by statute. The rationale of *Miles v. Apex Marine,* 498 U.S. 19 (1990), is not relevant in this case since, as will be further discussed, no applicable statute limits claimant's recovery to "pecuniary damages," as some case law interprets the effect of the Jones Act.

### C.     THE LHWCA

Under the LHWCA, there are generally speaking three categories of employees who are

---

[2] Claimant, Smith, has filed an Answer and Claim to Complaint with Jury Demand for Exoneration From or Limitation of Liability (Rec. Doc. 4), First Supplemental and Amending Answer and Claim to Complaint by Antonio Smith (Rec. Doc. 63), and Third Party Complaint against Certain Underwriters, Navigators Insurance Company (Rec. Doc. 92). In none of the pleadings does he claim Jones Act status.

entitled to benefits. In the first two categories are workers covered directly by the Act, while the third class of workers are those covered indirectly through application of the Outer Continental Shelf Lands Act ("OCSLA").  The first and primary group includes maritime workers injured on one of landward extensions (wharf, pier, dock, etc.) specified in the statute. The LHWCA has a situs requirement in that it covers injuries and deaths sustained "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."It also has a status requirement in that it covers injury and death to employees "engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker" with certain exceptions. 33 U.S.C. §§ 902(2)-(3), 903(a).

The status factor is met if the non-seaman employee spent some portion of his or her employment performing an essential or integral aspect of loading/unloading a vessel, ship building, ship repairing, or ship breaking. If both situs and status are found, the injured non-seaman employee is likely covered under the Act. Persons covered under the LHWCA are generally individuals who are not seafarers, but who are nevertheless employed to work around vessels, in capacities such as loading and repairing them. There are two different "maritime employment" status tests for employees not specifically enumerated in the statute. *Fontenot v. Awi, Inc*., 923 F.2d 1127, 1130 (5th Cir. 1991). The first, for Workers injured on navigable waters, is whether the individual has meaningful responsibilities on navigable waters, as opposed to just transiting across them to perform work. *Bienvenu v. Texaco, Inc*., 164 F.3d 901, 908 (5th Cir. 1999). The second, for Workers injured on shore, is whether their tasks are an integral part of a maritime activity enumerated by the

-6-

LHWCA. See Ne. *Marine Terminal Co. v. Caputo*, 432 U.S. 249, 271 (1977); *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 423-24 (1985); *Coloma v. Dir. OWCP*, 897 F.2d 394, 399-400 (9th Cir. 1990).

In the instant case, Smith was employed by Fieldwood as a pump operator.  He worked on fixed platforms in the Gulf,  trouble shooting, inspecting and repairing platform equipment. Claimant had absolutely no job duties or responsibilities with regard to vessels.  Thus, Claimant clearly would not pass the "status" test of the LHWCA since he was not engaged in maritime employment. However, as noted previously, the third category of non-seaman maritime employees who are potentially covered under the LHWCA are workers engaged in the exploration or development of natural resources on the Outer Continental Shelf.  These workers are not covered because they meet the "situs" and "status" tests of the LHWCA.  Rather, they are covered due to the fact the Outer Continental Lands Act  specifically provides that employees working on fixed platforms shall be covered under the LHWCA[3].

As noted by Rodi in its Memorandum, in 1972 Congress made substantial amendments to the LHWCA.  One of the major changes was the passage of §905(b).  Prior to the 1972 amendments, an injured stevedore could bring a claim against the  owner of a vessel upon which he was  working for claims under the general maritime laws, including a claim for unseaworthiness of the vessel.  If the stevedore was successful in his claim against the shipowner, the shipowner could in turn recover indemnity from the stevedore's employer.   The primary purpose for the passage of  §905(b) was to eliminate the longshoreman's right to assert a claim for unseaworthiness, and to  limit the liability of the employer to payment of compensation benefits.  While  §905(b) does maintain that, "In the

---

[3]  33 U.S.C. § 1333(b).

event of injury to a person covered under this chapter caused by the negligence of a vessel.... that person..."may bring an action against the vessel".... , no standard of negligence is set forth[4]. Further, the statute states that, " The *remedy* provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this [Act]." No mention is made of any limitation of damages.

In the seminal case of *Scindia Steam Nav. Co. v. de los santos*, 451 U.S. 156, 1981 AMC 601 (1981) the U.S. Supreme Court outlined the duties under the LHWCA owed by shipowners to longshore workers engaged in operations on their vessels pursuant to §905(b). These duties are primarily: (1) The "Turnover Duty", (2) The "Active Control Duty ", and (3) The Duty to Intervene. The "Turnover Duty" includes the duty of the shipowner to warn stevedores of hidden hazards of which the shipowner is aware. The "Active Control Duty" requires the shipowner to exercise care so as not to injure longshore workers in any area of the ship in which operations are actively being conducted by shipowner employees. Under the "Duty to Intervene", once unloading operations have begun, a shipowner has a duty to intervene in the operations if it becomes aware that the ship or its gear pose a danger to the longshoremen or that the stevedore is acting unreasonably in failing to protect its workers.

Clearly, the *Scindia* duties have no applicability to the case at bar, since Smith was not performing work aboard the M/V WILDCAT. Accordingly, while Claimant is a covered worker under the LHWCA, and his claims against Fieldwood are limited to recovery of LHWCA benefits, the basis of Smith's claims against Rodi is not the §905(b) *Scindia* standards. Instead, Claimant's entitlement to damages is governed by admiralty and general maritime law duties owed by a vessel

---

[4] See *e.g. Gilmore & Black,* Admiralty Law 2nd Ed. at p. 453.

-8-

owner to a passenger.  These duties far outdate the passage of the LHWCA, and have never been restricted by the LHWCA.

As noted by the U.S. Supreme Court in the case of *Moragne v. Moore-McCormack Lines*, 75 F. Supp. 969 (D. Md. 1948), "... although Congress, by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901-950, cut off from longshoremen and harbor workers the right extended to them by judicial construction of the Jones Act, 46 U.S.C.A. 688, to enjoy the same right of recovery from the vessel owner as was enjoyed by seamen, for negligent injury sustained while working on navigable waters, *International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157; Uravic v. F. Jarka Co., 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312; Swanson v. Marra Bros., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045*, **they have not been deprived of the protection given them with relation to personal injury by general or statutory maritime law**.  (emphasis added) at p. 972.

While with the subsequent passage of §905(b), the right of a covered worker to assert an unseaworthiness claim against a vessel was eliminated, *the right to recover all other damages available under the general maritime laws of the United States was not*.  Petitioner's complaint for "exoneration from or limitation of liability" acknowledges the fact that the M/C WILDCAT was carrying a complement of seven passengers – including Smith, and that the Fieldwood employees were merely passengers aboard the vessel at the time of the allision.  Simply stated, a passenger is someone who is on a vessel for transportation, who is also not a part of the crew. An individual gains passenger status when the individual, in good faith, intends to take passage, and places himself in care of the vessel and crew. *Riley v. Vallejo Ferry Co.*, 173 F. 331 (N.D. Cal. 1909).

### D.      CLAIMANT'S RIGHTS AS A PASSENGER

Under admiralty and general maritime law, passengers have three basic causes of action for personal injury: (1) a general maritime cause of action for negligence against alleged tortfeasors, and (2) two statutory causes of action against a vessel's owner, master (i.e. captain), officers, and even the vessel itself under certain circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959); 46 U.S.C. §§ 30102, 30103. The elements of a claim of negligence are the same as under state law: duty, breach, cause in fact, proximate cause, and damages. See, e.g., In re *Cooper/T.Smith,* 929 F.2d 1073, 1077 (5th Cir. 1991) (per curiam); *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d 993, 1000 (D. Ariz. 2006).

Vessel owners owe their passengers a duty of reasonable care under the circumstances. *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 357 (5th Cir. 2016); See *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). Owners, relatively speaking, are held to a high degree of care for the safety of their passengers. *Smith v. Southern Gulf Marine Co. No. 2*, 791 F.2d 416, 420 (5th Cir. 1986). Among the relevant factors are the type of carrier, the crew's experience, the risk involved, defendant's degree of control over passengers, and defendant's ability to take precaution against the risk. *Id*. at 421. However, a vessel owner does not need to warn passengers or make special arrangements for open-and-obvious risks. See *Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675, 678-79 (5th Cir. 1969); *Superior Oil Co. v. Trahan, 322 F.2d 234, 237* (5th Cir. 1963). see also *Counts v. Lafayette Crewboats, Inc.*, 622 F. Supp. 299, 301 (W.D. La. 1983).

In addition to the general maritime law cause of action for negligence, passengers have two statutory causes of action for personal injury. Under the first, a passenger can sue a vessel owner, the

-10-

vessel's master, and the vessel itself for personal injuries caused by a failure to comply with inspection standards or manning requirements or by a known defect in the vessel. 46 U.S.C. § 30102; see *Id*. §§ 3101-4705, 8101-9308. Under the second, anyone can sue a vessel's "master, mate, engineer or pilot" for personal injuries caused by negligence, willful misconduct, or failure to obey navigation laws. 46 U.S.C. § 30103.

Claimant suffered severe bodily injuries while he was being transported aboard the M/V WILDCAT, a vessel owned and operated by Petitioner. Since Claimant had passenger status at the time of the incident, general maritime law governs his claims, and the Court should look to general maritime law, not § 905(b) for the applicable law and damages. The facts of the recent case of *DePerrodil v. Bozovic Marine Inc*. 842 F.3d 352 (5th Cir. 2016) are very similar to those of the instant case. The plaintiff, Mr. DePerrodil, was an oilfield consultant whose employer chartered the M/V THUNDERSTAR, a vessel owned by defendant, Bozovick Marine, to take plaintiff from Venice, La. to his work site on an offshore platform. Mr. DePerrodil was injured when the M/V THUNDERSTAR's captain negligently caused the vessel to fall into a large wave trough. Plaintiff filed suit against Bozovick Marine to recover damages for his personal injuries.

The Court first noted that Mr. DePerrodil was covered by the LHWCA, and that his employer had paid benefits, including medical benefits, to or on his behalf. However, in considering the law governing the case before them, the Fifth Circuit did not look to the LHWCA, but directly to the general maritime law. The Court stated, "Maritime law governs this action. See *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 253, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Courts exercising maritime jurisdiction apply general principles of negligence law to tort actions. See, e.g., *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000); *Daigle v. Point Landing, Inc*.,

-11-

616 F.2d 825, 827 (5th Cir. 1980).  The Court went on to determine the proper legal duty was applied by the district judge. "See DePerrodil, 2015 WL 8542829, at *2–3. As the court stated, vessel owners owe their passengers a duty of reasonable care under the circumstances. See *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). Our court has held "shipowners, relatively speaking, are held to a high degree of care for the safety of their passengers". *Smith v. Southern Gulf Marine Co. No. 2*, 791 F.2d 416, 420 (5th Cir. 1986). ( at p. 357).   Nowhere in the opinion is there any reference to §905(b) of the LHWCA.

See also Judge Barbier's very recent decision in the case of *Stanley v. Starfleet Marine Transportation, Inc*.  U.S.D.C. E.D. La. CIVIL ACTION NO: 16-13753 (8/24/2018) 2018 WL 4042873. As noted by the Court,  "The Plaintiffs in this case are offshore platform operators, Roy Stanley and Mitchell Mouton, who were injured as passengers aboard the M/V MS. LINDA LEE while it was transporting them to shore on March 23, 2014. Plaintiffs sued the MS. LINDA LEE and its owner-operator, Starfleet Marine Transportation, Inc., alleging the Defendants' negligence caused their injuries." *Stanley v. Starfleet Marine Transportation, Inc*., CV 16-13753, 2018 WL 4042873, at *1 (E.D. La. Aug. 24, 2018) . In determining its basis for jurisdiction, the Court stated,  "This is a case of admiralty and maritime jurisdiction, brought under the provisions of 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. See generally *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249 (1972). *Stanley v. Starfleet Marine Transportation, Inc.*, CV 16-13753, 2018 WL 4042873, at *5 (E.D. La. Aug. 24, 2018).

-12-

**E.     PUNITIVE DAMAGES ARE ALLOWED IN GENERAL MARITIME LAW
CLAIMS**

Punitive damages have long been an available remedy under the admiralty and general
maritime laws. Although sparingly imposed, punitive damages are available as a remedy in general
maritime actions where a defendant's intentional or wanton and reckless conduct amounted to a
conscious disregard for the rights of others. *Rebardi v. Crewboats, Inc*., (La. App. 1 Cir. 02/11/05);
see *Poe v. PPG Industries*, 2000-1141, p. 6 (La. App. 3 Cir. 3/28/01), 782 So.2d 1168, 1173, writ
denied, 2001-1239 (La.6/22/01), 794 So.2d 801; see also *Williams v. State Through Dept. of Wildlife
and Fisheries*, 684 So.2d 1018 (La. App. 1 Cir. 11/20/96). Punitive damages serve the purpose of
punishing the defendant, of teaching him not to engage in such conduct again, and of deterring others
from following the defendant's example. *Mistich v. Pipelines, Inc*., 609 So.2d 921 (La.App. 4th
Cir.1992), writ denied, 613 So.2d 996 (La.1993), cert. denied, 509 U.S. 913, 113 S.Ct. 3020, 125
L.Ed.2d 709 (1993), citing *Complaint of Merry Shipping, Inc*., 650 F.2d 622 (5th Cir.1981). [T]he
long-standing precedent of recognizing the right to assert a claim for punitive damages under the
general maritime law remains the law. *Id*.

Unfortunately, there are no clearly defined rules regarding punitive damages, thereby leaving
the matter up to individual judges in different jurisdictions to fashion appropriate remedies.  The
following bodies of case law help to endorse the applicability of punitive damages in the case at bar.
In the recent case of  *Warren v. Shelter Mutual Ins. Co.*, No. 2016-C-1647, So. 3d, p. 31 (La.
10/18/17), the Louisiana Supreme Court noted that lower state appellate courts in Louisiana, as well
as federal courts, have found punitive damages to be an available remedy under general maritime
law where a defendant's intentional or wanton and reckless conduct amounted to a conscious

disregard for the rights of others. The Court held,

> "Punitive damages are available as a remedy in general maritime actions where a defendant's intentional or wanton and reckless conduct amounted to a conscious disregard for the rights of others. *Rebardi*, 906 So.2d at 457–58, citing *Poe*, p. 6, 782 So.2d at 1173; *Williams,* p. 5, 684 So.2d at 1022. The Supreme Court has held that punitive damages under common law for wanton, willful, and outrageous conduct extends to claims arising under federal maritime law. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 411, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009) (allowing punitive damages in maintenance and cure actions); see also *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 501–02, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008). *Warren v. Shelter Mut. Ins. Co.*, 233 So. 3d 568, 586–87 (La. 2017).

Warren serves as the first pronouncement from the Louisiana Supreme Court that punitive damages are available under general maritime law.

The U.S. Supreme Court recognized the availability of punitive damages under general maritime law based on a defendant's "common law duties to refrain from injuring the bodies and livelihoods of private individuals." *Exxon Shipping Co. v. Baker*, 544 U.S. 471, 489 (2008). The Court stated that "[t]he prevailing American rule limits punitive damages to cases of 'enormity', in which a defendant's conduct is outrageous, owing to gross negligence, willful, wanton, and reckless indifference for others' rights, or even more de-plorable behavior." *Id*. The consensus today is that punitive damages are aimed at retribution and deterring harmful conduct.

In *Collins v. A.B.C. Marine Towing L.L.C.*, No. CIV. A. 14-1900, WL 5254710, 2015 A.M.C. 2491, (E.D. La. 2015) the estate of a deceased Jones Act seaman pursued claims of Jones Act negligence and unseaworthiness against the seaman's employee and a general maritime law negligence claim against a non-employer third party, the Board of Commissioners of the Port of New Orleans. The plaintiff alleged gross negligence against the third party and sought punitive damages. Id. at 2492. The port filed a Rule 12(b)(6) motion to dismiss the punitive damages claim, arguing

-14-

that *Miles*, *Scarborough,* and *McBride* precluded such a claim for a Jones Act seaman. *Id*. at 2493.

Judge Fallon recognized that "neither the *Miles* nor the *McBride* opinions address and action by a seaman against a non-employer third-party tortfeasor." He acknowledged that although the plaintiff was a Jones Act seaman, the Jones Act had no bearing on the claim against the port, and as far as the [Port] is concerned, it should make no difference whether the Plaintiff was a seaman, a longshoreman, or a passenger."  Noting the irrelevance of the plaintiff's status with respect to the third-party claim, Judge Fallon stated that "the only relevant question is whether he has a gross negligence claim for punitive damages under general maritime law."  He cited the Supreme Court decisions in *Baker* and *Townsend* for affirmation that general maritime law generally provides for a remedy of punitive damages.

Judge Fallon recognized the impediment that the *Scarborough* decision presented in terms of prior Fifth Circuit ruling that explicitly held "neither one who has invoked his Jones Act seaman status nor his survivors may recover non-pecuniary damages from non-employer third parties." However, Judge Fallon concluded that the holding in *Scarborough* is "inconsistent" with the current state of general maritime law, reasoning "[t]he Fifth Circuit in *Scarborough* used the analysis in Guevara to justify broadening the Miles limitation of general maritime law punitive damage recovery to third-party claims." While the Court understands its obligation to follow Fifth Circuit precedent, the basis of *Scarborough* is *Guevara*, which was abrogated by *Townsend*. Thus, *Scarborough* has been effectively overruled.

*Townsend*, which was decided after *Scarborough* in 2009, calls into question the legal reasoning and conclusions espoused in *Scarborough*. In *Townsend*, the Supreme Court reined in the expansive interpretation of *Miles*, finding that the "laudable quest for uniformity does not require

-15-

narrowing of damages to the lowest common denominator approved by Congress for distinct causes of action." Thus, given that the *Townsend* court not only abrogated *Guevara*, but specifically limited the broad application of *Miles, Scarborough* is inconsistent with current Supreme Court precedent. The takeaway from *Townsend*, the governing Supreme Court law on the availability of punitive damages under general maritime law, is that a seaman can recover punitive damages under general maritime law if the Jones Act is not implicated. In fact, if the Jones Act is not implicated, the seaman is treated no differently in his ability to bring a cause of action than a non-seaman. 2015 A.M.C. at 2498-99.

Judge Fallon further recognized the inequity of the fact that survivors of a worker covered by the LHWCA and a non-seafarer are able to recover punitive damages under the same exact scenario. *Id*. at 2499. For these reasons, he allowed the punitive damages claim to proceed against the port.

In *Hume v. Consolidated Grain & Barge, Inc*., No. 15-0935, 2016 WL 1089349, 2016 A.M.C. 1291 (E.D.La.Mar.21, 2016) Judge Zainey addressed whether two seamen who suffered nonfatal injuries could proceed with claims for punitive damages against a non-employer third party. He analyzed existing Supreme Court and Fifth Circuit case law in a similar fashion as Judge Fallon did in Collins and decided to "adopt[] the reasoning set forth in Collins." *Id*. at *2. Judge Zainey explained that "[t]he Court notes, as the Collins court did, that the *Townsend* Court 'criticize[d] the expansive interpretation of *Miles* that had been relied upon to preclude the recovery of punitive damages.'" Collins, 2015 WL 5254710, at *3. Judge Zainey further explained:

> In holding that a Jones Act seaman has a general maritime law punitive damage remedy for willful failure to pay maintenance and cure, the *Townsend* Court stated that the laudable quest for uniformity does not require narrowing of damages to the lowest common

denominator approved by Congress for distinct causes of action. *Id.* (quoting *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 424 (2009)).

He subsequently stated that "[i]n light of this guidance from *Townsend*, the Court agrees with the Collins court that 'there is no need for uniform treatment of an employer and a third-party tortfeasor where there is no statutory remedy that is different than the general maritime law remedy.'" *Id.* at *4. Judge Zainey also recognized the inequity in depriving a seaman of the same remedies that a non-seaman could pursue under the same set of facts for a general maritime law negligence claim. He echoed Judge Fallon's declaration above, stating, "As far as [the third-party defendant] is concerned, it should make no difference whether the Plaintiff was a seaman, a longshoreman, or a passenger." *Id.* at *3. Judge Zainey allowed the punitive damage claim to proceed against the non-employer third party. *Id.*

In his *Wade* opinion, Judge Fallon acknowledges that "under the present state of the law, nonseaman who are not covered by the Jones Act may now be afforded greater protection than seaman under general maritime law, a law that was created and nurtured for the benefit of seaman." *Wade v. Clemco Indus. Corp.*, No. 16-502, 2017 WL 434425 (E.D. La. Feb. 1, 2017); See *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 215 (1996). Both *Collins* and *Hume* suggest that there are well-developed arguments that allow a seaman to proceed against a non-employer third party for punitive damages. Seamen have fewer rights than a non-seaman because seamen are governed by the Jones Act – a Congressional Act. Hence, a seaman's rights are more restricted than that of a non-seaman passenger.

In the case of *Callahan v. Gulf Logistics, LLC*, 2013 WL 5236888 (W.D.La. 9/16/13), cited by Rodi in its Memorandum, Judge Minaldi specifically addressed the issue of whether § 905 (b)

of the LHWCA permits recovery of punitive damages in a negligence action for alleged injuries

sustained outside of territorial waters.  After noting the conflicting case law on the issue, the Court

stated:

> "The defendants argue that *Robertson* stands for the proposition that a claimant suing under § 905(b) cannot recover any non-pecuniary damages, including punitive damages. This court does not read *Robertson* so broadly; however, even if it did, the Supreme Court's recent opinion in *Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009) alters the analytical foundation upon which the reasoning in Robertson was laid."

Continuing, the Court held:

> As a result of the Supreme Court's recent assertion in *Townsend*, and its clarification of its holding in *Miles*, *it seems clear that punitive damages are available for actions under general maritime law unless Congress has expressly forbade such availability. This court finds nothing in the language of § 905(b) which could be construed as so limiting the availability of punitive damages in a negligence action under the LHWCA.* (Emphasis added)

*Callahan*, 2013 WL 5236888, at *3 (W.D. La. Sept. 16, 2013).

Rodi, in its Memorandum, asserts that the *Callahan* decision is wrong in that it was decided

before the Firth Circuit opinion in *McBride v. Estis Well Service, L.L.C.* 768 F.3d 382, (5th Cir. 2014)

A.M.C. 2409.  This is simply not correct.  The *McBride* decision, rendered by a highly divided *en*

*banc* Court, only held that a Jones Act seaman cannot recover punitive damages for the gross

unseaworthiness of a vessel.  The Court again justified its decision in *Miles* that the Jones Act limits

a seaman's recovery to pecuniary losses where liability is predicated on the Jones Act or

unseaworthiness.   The case did not involve general maritime law claims of non-seamen against a

vessel owner, nor did it involve claims subject to the provisions of § 905(b) of the LHWCA.

Finally, Claimants would direct the Court's attention to the recent case of *Hancock v. Higman*

*Barge Lines, Inc.*, Not Reported in Fed. Supp., 2017 WL 3582433, (8/18/17) E.D. La. C.A. No.

16-14998.  This case, decided after *McBride*, involved the death of a young boy on the Gulf

Intercoastal Waterway.  The child was killed when a small boat from which he and his father were frogging, was swamped by a tugboat and its two barges in tow.  Plaintiffs filed suit alleging negligence, unseaworthiness and punitive damages for the grossly negligent conduct of the tugboat captain.  The defendants filed a FRCP Rule 12( c) motion to dismiss the unseaworthiness and punitive damage claims.  The Court dismissed the unseaworthiness claims on a finding the decedent was not a seaman or member of the towboat's crew.  In denying the defendants motion to dismiss the punitive damage claim, the Court stated;

> "However, Plaintiffs have alleged facts sufficient to make a claim for punitive damages under general maritime law. In order to satisfy this standard, the plaintiff must allege that the defendant engaged in "behavior that is more than merely negligent; rather, [the court] looks for 'gross negligence' ..., 'reckless or callous disregard for the rights of others' ..., or 'actual malice or criminal indifference.' " *Maritrans Operating Partners v. Diana T*, No. CIV. A. 97-1916, 1999 WL 144458, at *7 (E.D. La. Mar. 15, 1999) (citing In re *Marine Sulphur Queen*, 460 F.2d 89, 105 (2d Cir. 1972)). Here, Plaintiffs allege that the M/V Trinity's captain and the crew saw Darrell and Ethan Hancock in their mudboat, but that the ship did not slow down. The complaint alleges that M/V Trinity continued to bear down upon Darrell and Ethan Hancock, which caused them to evacuate the mudboat. *At this stage in litigation, the Court is not prepared to declare that these allegations, taken as true, fail to state a claim for which punitive damages may be appropriate under maritime law.*

(Emphasis added) *Hancock v. Higman Barge Lines*, Inc., CV 16-14998, 2017 WL 3582433, at *4 (E.D. La. Aug. 18, 2017)

## IV.   CONCLUSION

From the foregoing, it is evident that Claimant should be entitled to pursue punitive damages as a remedy for Petitioner's gross negligence. Petitioner's wanton and reckless conduct amounted to a conscious disregard for the rights of Claimant.  Therefore, punitive damages are appropriate in the instant case.  The claims at issue arise from the admiralty and general maritime laws of the United States, and have not been limited by statute, specifically to include § 905(b) of the LHWCA.

-19-

Claimant respectfully prays that this Court deny Petitioner's Rule 12 (b)(6) and Rule 12 (b)( c) Motion on Punitive Damages.

Respectfully submitted,

GARNER & MUNOZ
1010 Common Street, Suite 3000
New Orleans, Louisiana
Telephone: (504) 581-7070
Facsimile: (504) 581-7083


s/ John G. Munoz
JOHN G. MUNOZ - #9830

Attorney for Claimant, Antonio Smith