UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE § | | CIVIL ACTION NO. 2:17-CV-5394 |
| COMPLAINT OF RODI MARINE, LLC, § | | |
| AS OWNER AND OPERATOR OF THE § | | JUDGE GUIDRY |
| M/V WILDCAT, PETITIONING FOR § | | |
| EXONERATION FROM OR § | | MAGISTRATE JUDGE NORTH |
| LIMITATION OF LIABILITY § | | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS THIRD PARTY COMPLAINT OF RODI MARINE LLC**

MAY IT PLEASE THE COURT:

Claimant / third party defendant / counterclaimant / third party plaintiff, Fieldwood Energy LLC ("Fieldwood"), files this motion for a partial summary judgment seeking the dismissal of the claims for contractual indemnity and insurance coverage asserted by Rodi Marine, L.L.C. ("Rodi")[1] against Fieldwood in Rodi's First Superseding and Amended Third Party Complaint (Doc. 81). As discussed in greater detail herein, and confirmed by the testimony of Jody Jarrell, the manager of Rodi, Rodi had no connection to the M/V WILDCAT, which vessel allided with / struck a marked offshore platform, giving rise to the claims asserted in this civil action. As a result, the claims of Rodi against Fieldwood must be dismissed as a matter of law.

I.  **PROCEDURAL BACKGROUND**

On May 31, 2017, Rodi, original plaintiff-in-limitation, filed its Complaint for Exoneration from or Limitation of Liability (Doc. 1) for any and all claims arising out of the April 18, 2017, allision of the M/V WILDCAT with the Sugar or "S" platform, located in Block 23, South Timbalier Area, on the Outer Continental Shelf, off the Coast of Louisiana (hereafter

---

[1]  In this civil action / limitation of liability proceeding, there are two entities with similar names: Rodi Marine, L.L.C., the original plaintiff and third party plaintiff, and Rodi Marine Management LLC. For purposes of clarity Fieldwood refers to Rodi Marine, L.L.C. as Rodi and Rodi Marine Management LLC as "Management".

"the Allision"). The Court set a September 4, 2017, deadline for all persons to file their claims as concerns the Allision. (Doc. 3 – 1.)

On September 3, 2017, Fieldwood filed its Answer and Affirmative Defenses to Rodi's complaint (Doc. 10), in which Fieldwood asserted as an affirmative defense the allegations and averments set forth in Fieldwood's Verified Claim (Doc. 10, 2nd aff. def.), and also filed its Verified Claim. (Doc. 11.) On September 18, 2017, Rodi filed its Answer to the Claim of Fieldwood Energy, denying the allegations of paragraphs 13 and 14. (Doc. 18, paras. 13 & 14.)

Prior to the filing of Fieldwood's Verified Claim, Rodi had filed a third party complaint (Doc. 5) against Fieldwood for contractual defense and indemnity, which incidental demand was included in Rodi's answer to the claim of Antonio Smith (*Id.*). Personal injury claims were filed in this limitation proceeding by the following individuals: Antonio Smith (Doc. 4), Shawn Philbeck (Doc. 8), and Lionel Every Jr. (Doc. 12). All personal injury claims of Messrs. Philbeck, Every Jr. and Smith have been settled and dismissed. (Docs. 61, 140 and 172.)

Fieldwood filed its answer and affirmative defenses (Doc. 19) to Rodi's third party complaint, denying any liability to Rodi, and raising certain affirmative defenses thereto. As concerns Fieldwood's instant motion, Fieldwood incorporated into its answer to the third party complaint the prior allegations and averments of Fieldwood's Verified Claim, including Fieldwood's demand for contractual indemnity from Rodi. (Doc. 19, pp. 5 – 6, 2nd aff. def.)

Judge Morgan denied cross-motions for summary judgment (Doc. 73) filed by Rodi and Fieldwood concerning the interpretation of the indemnity provisions of the Brokerage Agreement between Rodi and Kilgore and the Master Time Charter Agreement between Fieldwood and Kilgore. During a conference with the Court conducted immediately after the hearing and denials of the cross-motions, Judge Morgan instructed the parties to file amended

pleadings bringing the proper parties with respect to the M/V WILDCAT into this civil action. (Doc. 74).

Thereafter, GJR Marine, LLC ("GJR") and Management filed an amended complaint (Doc. 80) seeking exoneration from or limitation of liability for the Allision as well as an amended Third Party Complaint against Fieldwood seeking contractual defense and indemnity and for insurance coverage pursuant to the Time Charter from the personal injury claims of the WILDCAT passengers who were employed by Fieldwood (Doc. 81). Rodi also alleged claims against Fieldwood for contractual indemnity pursuant to the Time Charter (*Id*., para. 15) as well as insurance coverage "co-extensive with the extent of Fieldwood's defense and indemnity obligations. (*Id*., para. 16.)

Fieldwood filed a Second Verified Claim to the amended complaint-in-limitation seeking contractual defense and indemnity from GJR pursuant to the GJR Brokerage Agreement. (Doc. 83.) Fieldwood also filed a Third Party Complaint against Navigators, Excess Underwriters, and Munich Re – the primary protection and indemnity underwriter for GJR, seeking coverage under their respective policies as an additional insured, an additional named insured, as well as a waiver of those insurers' rights of subrogation against Fieldwood. (Doc. 87.) Fieldwood and Munich Re subsequently settled all claims each had against the other, and the Court dismissed with prejudice Fieldwood's third party complaint against Munich Re and Munich Re's counterclaim against Fieldwood. (Doc. 150.) Navigators and Excess Underwriters filed answers denying any and all liability to Fieldwood. (Docs. 123 & 126.)

As of this writing, all personal injury claims of the passengers and crew of the WILDCAT have been settled. The remaining claims at issue are as follows:

1. Fieldwood's claims against GJR for contractual defense and indemnity pursuant to the GJR Brokerage Agreement;

2. Fieldwood's claims against Navigators and Excess Underwriters for insurance coverage and defense pursuant to the GJR Brokerage Agreement (in Fieldwood's capacity as an additional assured and an additional named insured);

3. alternatively, Fieldwood's claims against GJR for insurance coverage and defense pursuant to the GJR Brokerage Agreement in the event Navigators and Excess Underwriters are found not to insure Fieldwood as an additional named insured;

4. Fieldwood's recovery pursuant to the GJR Brokerage Agreement of attorney's fees and costs and reimbursement of amounts paid on Fieldwood's behalf in settlement of the claims of Mr. Smith;

5. GJR and Management's claims against Fieldwood for contractual defense and indemnity pursuant to the Master Time Charter Agreement between Fieldwood, as Charterer, and Kilgore, as Owner (hereafter "Time Charter"); and,

6. Rodi's claims against Fieldwood for contractual defense and indemnity pursuant to the same Time Charter.

The instant motion for summary judgment is directed to Issue 6 – Rodi's claims against Fieldwood for contractual defense and indemnity as well as insurance coverage pursuant to the Time Charter.

## II. STATEMENT OF UNCONTESTED MATERIAL FACTS

In accordance with Local Rule 56.1, Fieldwood has this date filed a separate Statement of Uncontested Facts to which is attached the evidentiary support for each statement. In the footnotes, Fieldwood identifies the number of the corresponding statement of fact and thereby

also the evidentiary support for that statement.

Effective January 1, 2014, Kilgore, identified as "Owner", and Fieldwood, identified as "Charterer", executed a Master Time Charter Agreement (hereafter "Time Charter"), a copy of which is attached as Exhibit 1 to Fieldwood's Statement of Uncontested Material Facts.[2] Paragraph 2 of the Time Charter envisioned Kilgore acting as a broker for the vessels Fieldwood would potentially decide in the future to charter under the terms and conditions of the Time Charter, as follows:

> This Agreement does not obligate [Kilgore] to charter its vessels to [Fieldwood], nor does it obligate [Fieldwood] to hire <u>any vessel or vessels</u> owned, <u>brokered</u>, or chartered <u>by [Kilgore]</u>, but it, together with any Short Form between [Kilgore] and [Fieldwood] dated subsequent to the Effective Date, shall govern the respective rights and duties of [Kilgore] and [Fieldwood] with respect to the charter of [Kilgore's] vessels by [Fieldwood].

(Exh. 1, Time Charter, pp. 1 – 2, para. 2.)[3]

Paragraph 25 of the Time Charter provided, in relevant part: "This Agreement shall be governed by and the relations between the Parties determined in accordance with the general maritime law of the United States, not including any of its choice of law rules that would direct or refer to the laws of another jurisdiction." (*Id.*, para. 25.)[4]

On May 10, 2015, GJR, identified as "Operator", and Kilgore, identified as "Broker" executed the GJR Brokerage Agreement, a true and correct copy of which is attached as Exhibit 2 to Fieldwood's Statement of Uncontested Material Facts filed this date.[5] Pursuant to the GJR Brokerage Agreement, GJR appointed Kilgore as GJR's agent for obtaining charters or similar work contracts for GJR's vessels.[6] As set forth in the GJR Brokerage Agreement, Kilgore acted

---

[2] Uncontested Fact No. 1.
[3] Uncontested Fact No. 2.
[4] Uncontested Fact No. 3.
[5] Uncontested Fact No. 4.
[6] Uncontested Fact No. 5.

at all times as the broker of the M/V WILDCAT.[7]

The Brokerage Agreement further provided as concerns the existence of master time charter parties:

> It is understood that in consideration of procuring work for [GJR's] vessel, Charterer may require that a Master Time or similar charter be in place between [Kilgore] and Charterer, and that the charter of [GJR's] vessel will be controlled by the Time Charter. [GJR] agrees to assume any and all obligations which [Kilgore] has assumed in any such Time Charter including, but not limited to, all defense and indemnity and insurance procurement obligations.

(Exh. 2, GJR Brokerage Agreement, p. 2, art. 2.)[8]

The M/V WILDCAT was working for Fieldwood on or about April 18, 2017, when the M/V WILDCAT allided with a platform in the Gulf of Mexico.[9] On April 17 and 18, 2017, the M/V WILDCAT was working and performing services pursuant to both the GJR Brokerage Agreement and the Time Charter.[10]

### A. The Indemnity Provisions of the Time Charter

Rodi's claims against Fieldwood are based on the reciprocal indemnity provisions of the Time Charter, as follows:

> [Fieldwood] HEREBY AGREES TO RELEASE, INDEMNIFY, PROTECT, DEFEND, AND HOLD HARMLESS OWNER GROUP FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATED TO (1) THE INJURY, ILLNESS, OR DEATH OF ANY MEMBER OF CHARTERER GROUP …, WITHOUT REGARD TO WHETHER ANY SUCH INJURY, ILLNESS OR DEATH … IS CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE (WHETHER SOLE, JOINT OR CONCURRENT; ACTIVE OR PASSIVE), STRICT LIABILITY, STATUTORY LIABILITY, CONTRACTUAL LIABILITY, BREACH OF WARRANTY OR OTHER FAULT (EXCLUDING ONLY THE GROSS NEGLIGENCE OR INTENTIONAL MISCONDUCT) OF ANY MEMBER OF THE OWNER GROUP OR BY ANY DEFECT OR PRE-EXISTING CONDITION (WHETHER KNOWN OR UNKNOWN; PATENT, LATENT OR

---

[7] Uncontested Fact No. 6.
[8] Uncontested Fact No. 7.
[9] Uncontested Fact No. 8.
[10] Uncontested Fact No. 9.

OTHERWISE) OR UNSEAWORTHINESS OF THE VESSEL.

(Exh. 1, Time Charter, para. 12(b)(ii).)[11]

Paragraph 12(a)(iii) of the Time Charter defined "Owner Group" to include "the [M/V WILDCAT] and its owners and operators, and its and their respective contractors of any tier". (*Ibid*., para. 12(a)(iii).)[12]

### B. The Insurance Provisions of the Time Charter.

Rodi has also alleged entitlement to insurance coverage under Fieldwood's insurance policies, although it has not named Fieldwood's insurers as parties to this litigation. Paragraph 11(c) of the Time Charter provided for the extension to Owner Group of certain benefits under Fieldwood's insurance policies, "but only for and to the extent of the indemnities and liabilities assumed by" Fieldwood, as follows:

> The Commercial General Liability Insurance policy shall name Owner Group as additional insureds <u>but only for and to the extent of the indemnities and liabilities assumed by [Fieldwood]</u> hereunder. The underwriters of all insurance policies required of [Fieldwood] hereunder shall waive their rights of subrogation against Owner Group and their respective insurers <u>but only for and to the extent of the indemnities and liabilities assumed by [Fieldwood]</u> hereunder. <u>Only for and to the extent of the indemnities and liabilities assumed by [Fieldwood]</u> herein, the insurance policies required under this Agreement and any other property, casualty or liability insurance policies of [Fieldwood] in any way providing coverage related to this Agreement, whether or not such policies are required by this Agreement, are to be endorsed to delete the "other insurance provisions" of [Fieldwood's] insurance policies and to provide that all of [Fieldwood's] policies are to be primary insurance.

(*Ibid*, para. 11(c)) (emphasis added).[13]

Appearing immediately below Paragraph 11(c) of the Time Charter, Fieldwood and Kilgore had expressly clarified in bold-face type what was meant by the recurring phrase "but only for and to the extent of the indemnities and liabilities assumed by" the respective party, as

---

| | |
|---|---|
| 11 | Uncontested Fact No. 10. |
| 12 | Uncontested Fact No. 11. |
| 13 | Uncontested Fact No. 12. |

follows:

> Notwithstanding any other provision herein, the parties expressly agree that the additional insured, waivers of subrogation, and primary insurance which each Party (the "Insuring Party") is obtaining for the other Party and their Group (the "Insured Parties") shall apply only for and to the extent of the liabilities (i.e., the release, defense and indemnity obligations) expressly assumed by the Insuring Party, and shall not offer protection to the Insured Parties for any liabilities assumed by the Insured Parties in this or any other agreement. For avoidance of doubt, the Parties agree that the insurance requirements herein, including additional insured, primary insurance, and waiver of subrogation requirements, shall not prime, supersede, or limit the Parties' and the Insured Parties' respective release, defense and indemnity obligations.

(*Ibid.*)[14]

### C. Rodi has No Connection Whatsoever to the M/V WILDCAT and Therefore Cannot Recover Contractual Defense and Indemnity from Fieldwood under the Time Charter.

Rodi is a limited liability company, whose members are Jody Jarrell and Donald Wade Guillory.[15] Rodi does not have any parent corporations or companies.[16] Rodi does not have any ownership interest in either GJR or Management.[17]

The WILDCAT is the sole physical asset owned by GJR at the time of the Allision.[18] The sole physical asset owned by Rodi at the time of the Allision was a different vessel, the M/V MISS PEGGY ANN.[19] The allegations that Rodi was the owner of the WILDCAT on the date of the Allision were incorrect.[20]

At the time of the Allision, Rodi was not involved with the management of either GJR or the WILDCAT.[21] Rodi was not involved with the navigation of the WILDCAT at the time of the

---

[14] Uncontested Fact No. 13.
[15] Uncontested Fact No. 14.
[16] Uncontested Fact No. 15.
[17] Uncontested Fact No. 16.
[18] Uncontested Fact No. 17.
[19] Uncontested Fact No. 18.
[20] Uncontested Fact No. 19.
[21] Uncontested Fact No. 20.

Allision.[22]  Rodi was not the broker of the WILDCAT at the time of the Allision.[23]

Rodi was not involved with Management as concerns the WILDCAT in 2017.[24] Similarly, Rodi was not involved with Kilgore as concerns the WILDCAT in April, 2017.[25] Rodi had nothing to do with the WILDCAT or its crew at the time of the accident.[26] Rodi has never been involved in owning or operating the WILDCAT.[27]

### III. LAW AND ARGUMENT

#### A. The Standard for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure requires the entry of summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Priester v. Lowndes Co.*, 354 F.3d 414, 419 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004); Fed. R. Civ. P. 56(a). The Court's interpretation of a contract raises purely legal questions and thus are proper for resolution by summary judgment. *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 348 (5th Cir. 2015).

It is settled Fifth Circuit jurisprudence:

> A maritime contract . . . whether governed by federal maritime law or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous. … Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties. … Where the written instrument is so worded that it can be given a definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law.

*LLOG Expl. Co. v. Signet Maritime Corp.*, 673 Fed. Appx. 422, 425 (5th Cir. 2016) (internal citations omitted). Similarly, "[u]nder federal maritime law, a court may not look beyond the written language of a contract to determine the intent of the parties unless the disputed contract

---

[22] Uncontested Fact No. 21.
[23] Uncontested Fact No. 22.
[24] Uncontested Fact No. 23.
[25] Uncontested Fact No. 24.
[26] Uncontested Fact No. 25.
[27] Uncontested Fact No. 26.

provision is ambiguous." *International Marine, L.L.C. v. FDT, L.L.C*., 619 Fed. Appx. 342, 349 (5th Cir. 2015).

    **B.    The Time Charter is a Maritime Contract Interpreted in Accordance with the General Maritime Law.**

It is settled law that the time charter of a vessel is a maritime contract. *Bourg v. Chevron U.S.A. Inc*., 91 F.3d 141, 142 (5th Cir. 1996); *Fontenot v. Mesa Petroleum Co*., 791 F.2d 1207, 1214 (5th Cir. 1986). Accordingly, the Time Charter is a maritime contract. *Ibid*. The Fifth Circuit provided the following instructions when interpreting contractual provisions:

> Federal courts sitting in admiralty adhere to the axiom that a contract should be interpreted so as to give meaning to all of its terms – presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous. … [A]n interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable.

*Foster Wheeler Energy Corp. v. AN NING JIANG M/V*, 383 F.3d 349, 354-58 (5th Cir. 2004).

    **C.    Rodi's Claim for Contractual Indemnity Should be Denied, because Rodi is not a Member of Owner Group as Defined by the Time Charter, as a Matter of Law.**

It is undisputed that Rodi cannot qualify as a member of the "Owner Group" as defined in the Time Charter. Rodi was not the owner of the WILDCAT; GJR was. While the original complaint alleged Rodi was the owner of the WILDCAT, the deposition testimony of Rodi's company representative clarified that allegation was a mistake.

Furthermore, it is established that Rodi did not broker, operate, manage, or navigate the WILDCAT. As Rodi testified during its deposition:

> Q.    Basically, there was no involvement with Rodi Marine, L.L.C. and the WILDCATE in April of 2017 at all?
>
> A.    Correct.

(Rodi depo., p. 23.)

Accordingly, Rodi is not a member of Owner Group, as a matter of law. As a result, Fieldwood is not obligated to contractually defend and indemnify Rodi from the claims initially asserted against Rodi, also as a matter of law.

**D. Rodi's Claim for Insurance Coverage and Defense from Fieldwood Should be Denied, because Fieldwood is not Obligated to Defend or Indemnify Rodi.**

The Time Charter makes clear that Rodi's entitlement to additional insured status, waiver of subrogation and other benefits provided by Fieldwood's insurance policies is limited to "<u>only for and to the extent of the indemnities and liabilities assumed by [Fieldwood]</u>". (Exh. 1, Time Charter, para. 11(c).) This is further clarified by the bold-faced paragraph appearing immediately below Paragraph 11(c) "the parties expressly agree that the additional insured, waivers of subrogation, and primary insurance which each Party (the "Insuring Party") is obtaining for the other Party and their Group (the "Insured Parties") shall apply only for and to the extent of the liabilities (i.e., the release, defense and indemnity obligations) expressly assumed by the Insuring Party".

As Rodi alleged in its amended Third Party Complaint, Fieldwood's insurance obligations to Rodi were co-extensive with Fieldwood's indemnity obligations. *M/V LITTLE KELLY LLC v. Burlington Resources Oil & Gas Co. LP*, 2011 WL 3300375 (E.D. La. 2011) (Berrigan, J.) Accordingly, if Fieldwood was obligated to defend and indemnify Rodi, then Fieldwood was also obligated to procure the insurance policies required by the Time Charter, and furthermore, to endorse those policies to extend their coverage to Rodi.

Axiomatically, because Fieldwood was not obligated to defend and indemnify Rodi, as a matter of law, Fieldwood likewise was not obligated to procure insurance on behalf of Rodi either. *Id*. As a result, Rodi's claims for insurance coverage against Fieldwood should be dismissed.

## CONCLUSION

For the foregoing reasons, Fieldwood Energy LLC requests this Court grant this motion, and enter an Order dismissing the claims by Rodi Marine, L.L.C. against Fieldwood for defense and indemnity as well as insurance coverage and defense as alleged in Rodi's First Superseding and Amended Third Party Complaint, as a matter of law, with prejudice.

April 28, 2020
New Orleans, Louisiana

Respectfully submitted:

  /s/ James D. Bercaw
James D. Bercaw, T.A. (20492)
**KING & JURGENS, L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
Email: jbercaw@kingkrebs.com

*Counsel for Fieldwood Energy LLC*