UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE | § | CIVIL ACTION NO. 2:17-CV-5394 |
| COMPLAINT OF RODI MARINE, LLC, | § | |
| AS OWNER AND OPERATOR OF THE | § | JUDGE GUIDRY |
| M/V WILDCAT, PETITIONING FOR | § | |
| EXONERATION FROM OR | § | MAGISTRATE JUDGE NORTH |
| LIMITATION OF LIABILITY | § | |

**MEMORANDUM IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT TO LIMIT ANY
<u>RECOVERY BY RODI ENTITIES TO THEIR DEDUCTIBLE</u>**

MAY IT PLEASE THE COURT:

Claimant / third party defendant / counterclaimant / third party plaintiff, Fieldwood Energy LLC ("Fieldwood"), files this memorandum in support of its motion for a partial summary judgment limiting the maximum recovery of either GJR Marine, LLC ("GJR") and Rodi Marine Management, LLC ("Management", hereafter collectively the "Rodi Entities") against Fieldwood, which is expressly denied, to their policy deductible of $15,000, and declaring that the insurers of GJR and Management have no subrogation rights against Fieldwood for amounts those insurers paid to or on behalf of GJR and Management as well as any amounts in the future as an initial matter because Fieldwood is an additional insured and secondly because those insurers expressly waived their rights of subrogation against Fieldwood.

As discussed in greater detail herein, the resolution of the these three issues turns on the insurance provisions of Paragraph 5 of the Brokerage Agreement ("GJR Brokerage Agreement") between GJR and Kilgore Marine Services, L.L.C. ("Kilgore") through which GJR agreed to unqualifiedly name Fieldwood, as a member of the "Broker Group", as an additional assured on all of GJR's policies, and to waive GJR's insurers rights of subrogation against Fieldwood. All three policies potentially covering the Rodi Entities for the Allision contain endorsements or

policy definitions that permitted GJR to name additional insureds and to waive the respective insurers rights of subrogation against Fieldwood.

While third party defendants, Navigators Insurance Company[1] and Excess Underwriters,[2] have not filed a claim against Fieldwood in this litigation, Fieldwood anticipates that those insurers may have attempted to assign to GJR and/or Management their rights to recover against Fieldwood. Nevertheless, when GJR and/or Management attempt to step into the shoes of those insurers via assignment, GJR and/or Management will still be bound by the policy provisions that name Fieldwood as an additional insured as well as waive their rights of subrogation, and thereby preclude any recovery against Fieldwood for amounts in excess of the policy deductible, or $15,000.00.

I. PROCEDURAL BACKGROUND

On May 31, 2017, Rodi Marine, L.L.C. (hereafter "Rodi"), original plaintiff-in-limitation, filed its Complaint for Exoneration from or Limitation of Liability (Doc. 1) for any and all claims arising out of the April 18, 2017, allision of the M/V WILDCAT with the Sugar or "S" platform, located in Block 23, South Timbalier Area, on the Outer Continental Shelf, off the Coast of Louisiana (hereafter "the Allision"). Judge Morgan set a September 4, 2017, deadline for all persons to file their claims as concerns the Allision. (Doc. 3 – 1.)

On September 3, 2017, Fieldwood filed its Answer and Affirmative Defenses to Rodi's complaint (Doc. 10), in which Fieldwood asserted as an affirmative defense the allegations and averments set forth in Fieldwood's Verified Claim (Doc. 10, 2nd aff. def.), and also filed its Verified Claim. (Doc. 11.) On September 18, 2017, Rodi filed its Answer to the Claim of

---

[1] Third party defendant, Navigators Insurance Company, issued Policy No. HO16LIA00252402, which provided primary marine general liability insurance to GJR and Management, among others (hereafter "the MGL Policy").

[2] Third party defendants, Certain Underwriters at Lloyd's, London and Navigators Insurance Company, issued Cover Note TRM-407507, which provided excess insurance coverage over both the Primary P&I Policy, *supra*, and the MGL Policy, *supra*, to GJR and Management, among others (hereafter the "Excess Policy").

Fieldwood Energy, denying the allegations of paragraphs 13 and 14. (Doc. 18, paras. 13 & 14.)

Prior to the filing of Fieldwood's Verified Claim, Rodi had filed a third party complaint (Doc. 5) against Fieldwood for contractual defense and indemnity, which incidental demand was included in Rodi's answer to the claim of Antonio Smith (*Id.*).[3] Personal injury claims were filed in this limitation proceeding by the following individuals: Antonio Smith (Doc. 4), Shawn Philbeck (Doc. 8), and Lionel Every Jr. (Doc. 12). The potential claims of the other passengers of the WILDCAT, her master and crew were settled previously.

Fieldwood filed its answer and affirmative defenses (Doc. 19) to Rodi's third party complaint, denying any liability to Rodi, and raising certain affirmative defenses thereto. Fieldwood incorporated into its answer to the third party complaint the prior allegations and averments of Fieldwood's Verified Claim, including Fieldwood's demand for contractual indemnity from Rodi. (Doc. 19, pp. 5 – 6, 2nd aff. def.)

Judge Morgan denied cross-motions for summary judgment filed by Rodi and Fieldwood concerning the interpretation of the indemnity provisions of the Brokerage Agreement between Rodi and Kilgore and the Master Time Charter Agreement ("Time Charter") between Fieldwood and Kilgore. GJR and Management were subsequently added as plaintiffs-in-limitation through an amended complaint seeking exoneration from or limitation of liability for the Allision. (Doc. 80.)

GJR, Management and Rodi Marine, L.L.C. also filed a First Superseding and Amended Third Party Complaint (Doc. 81) against Fieldwood seeking contractual defense and indemnity pursuant to the Time Charter from the personal injury claims of the WILDCAT passengers who were employed by Fieldwood. Fieldwood filed an answer, denying any liability to the Rodi

---

[3] On April 28, 2020, Fieldwood filed its motion for partial summary judgment (Doc. 183) to dismiss the claims of Rodi Marine, L.L.C. against Fieldwood, which motion has a submission date of May 13, 2020. No opposition has been filed as of this date, and thus Fieldwood submits that motion should be granted as unopposed.

Entities, and, in turn, filed a counterclaim against Rodi Marine, L.L.C., to which Rodi Marine, L.L.C. filed an answer. (Doc. Nos. 84 & 118.)

Fieldwood filed a Second Verified Claim to the amended complaint-in-limitation seeking contractual defense and indemnity from GJR pursuant to the GJR Brokerage Agreement. Fieldwood also filed a Third Party Complaint (Doc. 87) against Navigators, Excess Underwriters, and Munich Re – the primary marine protection and indemnity underwriter for GJR, Management and Rodi Marine, L.L.C. – seeking coverage under their respective policies as an additional insured, an additional named insured,[4] as well as a waiver of those insurers' rights of subrogation against Fieldwood. Navigators and Excess Underwriters filed answers denying any and all liability to Fieldwood. (Doc. Nos. 121 & 123.)

Munich Re filed an answer and a counterclaim against Fieldwood, to which Fieldwood filed an answer denying any liability to Munich Re. (Doc. Nos. 122 & 141.) Fieldwood and Munich Re, only in its capacity as insurer of the Primary P&I Policy,[5] ultimately settled their dispute and their claims against each other were partially dismissed. (Doc. No. 150.)

In this motion, Fieldwood requests this Court to enter a partial summary judgment, as follows:

1. Limiting the recovery of the Rodi Entities against Fieldwood to the $15,000 policy deductible on the Primary P&I Policy, which are the only amounts the Rodi Entities have paid out of pocket for their liability arising out of the Allision;

2. pursuant to the GJR Brokerage Agreement, Fieldwood is entitled to coverage as an additional insured / additional assured under the MGL Policy and the Excess Policy, and thus

---

[4] Fieldwood expressly reserves for another day its factual and legal arguments that it is an additional named insured on the MGL Policy and Excess Policy pursuant to the Special Endorsement of the GJR Brokerage Agreement.

[5] In addition to its role as Primary P&I Policy insurer, Munich Re also is a following underwriter on the Excess Policy. Accordingly, Fieldwood's claims against Munich Re, in its capacity as an Excess Underwriter, were preserved.

Fieldwood is entitled to a partial summary judgment that Navigators and Excess Underwriters are precluded from subrogating against Fieldwood for any amounts Navigators and Excess Underwriters have paid or will pay to or on behalf of the Rodi Entities; and,

3. should there be any remaining rights of subrogation Navigators and Excess Underwriters may have against Fieldwood despite its status as an additional insured, then this Court should enter partial summary judgment declaring those rights of subrogation against Fieldwood have been expressly waived by the MGL Policy and the Excess Policy.

## II. UNCONTESTED MATERIAL FACTS

In accordance with Local Rule 56.1, Fieldwood has this date filed a separate Statement of Uncontested Facts to which is attached the evidentiary support for each statement. In the footnotes, Fieldwood identifies the number of the corresponding statement of fact and thereby also the evidentiary support for that statement.

### A. The GJR Brokerage Agreement and its Insurance Provisions

On May 10, 2015, GJR, identified as "Operator", and Kilgore, identified as "Broker" executed the GJR Brokerage Agreement.[6] Pursuant to the GJR Brokerage Agreement, GJR appointed Kilgore as GJR's agent for obtaining charters or similar work contracts for GJR's vessel, the M/V WILDCAT.[7] As set forth in the GJR Brokerage Agreement, Kilgore acted at all times as the broker of the M/V WILDCAT.[8]

The purpose of the GJR Brokerage Agreement was to use the WILDCAT, a vessel, as a crew vessel especially for Fieldwood.[9] The WILDCAT played a substantial role in the

---

[6] Uncontested Fact No. 1.
[7] Uncontested Fact No. 2.
[8] Uncontested Fact No. 3.
[9] Uncontested Fact No. 4.

completion of the GJR Brokerage Agreement.[10]

All of Kilgore's brokerage agreements were contracts relating to the vessels to be used as a vessel for purposes of Kilgore's customers.[11] Kilgore brokers three types of vessels to its customers: (1) utility boats, (2) crew boats and (3) offshore supply boats.[12] The utility vessels that Kilgore brokered would move cargo and personnel from shore to offshore structures, and among offshore structures.[13] The purpose of the crew boats that Kilgore brokers to its customers are to move mostly personnel, but also fuel and water to and from offshore structure and shore bases, as well as among various platforms.[14] The offshore supply vessels that Kilgore brokers to its customers are used to carry supplies and underdeck cargo, liquid mud and drilling fluid from shore to offshore, or among various platforms offshore.[15]

The term "Broker Group" was defined to include Kilgore "and any Charterer or customer for whom work was to be performed."[16] The term "Charterer" was defined to "include any customer for whom the vessel will be working."[17]

The M/V WILDCAT was working for Fieldwood on or about April 18, 2017, when the M/V WILDCAT allided with a platform in the Gulf of Mexico.[18] On April 17 and 18, 2017, the M/V WILDCAT was working and performing services pursuant to both the GJR Brokerage Agreement and the Time Charter.[19] Fieldwood is a member of the Broker Group.[20]

---

[10] Uncontested Fact No. 5.
[11] Uncontested Fact No. 6.
[12] Uncontested Fact No. 7.
[13] Uncontested Fact No. 8.
[14] Uncontested Fact No. 9.
[15] Uncontested Fact No. 10.
[16] Uncontested Fact No. 11.
[17] Uncontested Fact No. 12.
[18] Uncontested Fact No. 13.
[19] Uncontested Fact No. 14.
[20] Uncontested Fact No. 15.

The second unnumbered paragraph of Paragraph 5 of the Brokerage Agreement contained the following unlimited and unrestricted insurance provision in favor of "Broker Group": "[GJR] further … agrees that all members of Broker Group will be named as an additional assured(s) with waiver of subrogation on all [GJR] insurance policies."[21] The GJR Brokerage Agreement required GJR to name Fieldwood as an additional insured with waiver of subrogation on all of GJR's insurance policies.[22]

**B.   The "Naming" and "Waiving" Provisions of the MGL Policy**

Navigators issued Policy No. HO16LIA00252402 (hereafter "the MGL Policy") on January 30, 2017 to Rodi Marine, L.L.C. in Lafayette, Louisiana, through Rodi's brokers also located in Lafayette, with a policy period starting on January 1, 2017.[23] Accordingly, the MGL Policy was delivered in Louisiana.[24]

The WILDCAT was listed on the Schedule of Vessels.[25] GJR and Management are listed as an Additional Named Assured.[26]

The MGL Policy had policy limits of $1 million and a deductible of $5,000.00.[27] The MGL Policy contained the following Blanket Additional Assured and Blanket Waiver of Subrogation Endorsement:

**I.**   Section II – Who is An Assured is amended to include as an additional assured any person or organization to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy or who is added by endorsement, but only with respect to liability arising out of your work.

**II.**   The following is added to Paragraph 9. Transfer of Rights Of Recovery Against Others to Us of Section IV – Conditions:

---

[21] Uncontested Fact No. 16.
[22] Uncontested Fact No. 17.
[23] Uncontested Fact No. 18.
[24] Uncontested Fact No. 19.
[25] Uncontested Fact No. 20.
[26] Uncontested Fact No. 21.
[27] Uncontested Fact No. 22.

> We waive any right of recovery we may have against the person or organization because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization for whom the Named Assured is required to waive subrogation.
>
> This waiver of subrogation will apply only when the waiver is issued prior to an "occurrence."

(MGL Policy, p. 64 of 65, Blanket Additional Assured and Blanket Waiver of Subrogation Endorsement.)[28] The Allision occurred on April 18, 2017, after the May 10, 2015, date of the GJR Brokerage Agreement and after the January 1, 2017, inception date of the MGL Policy.[29]

By operation of the GJR Brokerage Agreement and the Blanket Additional Assured and Blanket Waiver of Subrogation Endorsement of the MGL Policy, Fieldwood qualifies as an additional assured on the MGL Policy.[30] Furthermore, the GJR Brokerage Agreement and the foregoing endorsement required Navigators to waive its rights of recovery against Fieldwood.[31]

### C. The "Naming" and "Waiving" Provisions of the Primary P&I Policy.

Munich Re issued Policy No. TRM-407508 (hereafter "the Primary P&I Policy") on January 9, 2017 to Rodi Marine, L.L.C. in Lafayette, Louisiana, through Rodi's brokers also located in Lafayette, with a policy period starting on January 1, 2017.[32] The WILDCAT was listed on the Schedule of Vessels.[33] GJR and Management are listed as Assureds.[34]

The Primary P&I Policy contained the following definitions of "Covered Party" and "Additional Assureds":

**PART A – INSURING TERMS**

---

[28] Uncontested Fact No. 23.
[29] Uncontested Fact No. 24.
[30] Uncontested Fact No. 25.
[31] Uncontested Fact No. 26.
[32] Uncontested Fact No. 27.
[33] Uncontested Fact No. 28.
[34] Uncontested Fact No. 29.

* * *

2. Covered Party/Parties

   2.1 The term "Covered Party" or "Covered Parties" shall mean the Named Insured and/or any legal entities or individuals added as Additional Insured(s) to the Policy pursuant to Paragraph 3 below.

   2.2 All terms and conditions of the SP-23 form applicable to the "Assured" shall apply to each Covered Party.

3. Additional Insureds

   3.1 We agree that, if required by "insured contract", any person, firm or organization is included as an additional insured but only with respect to "bodily injury" and/or "property damage" arising out of operations performed by the Named Insured but only to the extent required under said "insured contract".

   3.2 The words "Insured Contract", wherever used in this Policy, shall mean any written contract entered into by the "Insured" where the "Insured" assumes the tort liability of another party to pay for "Bodily Injury" or "Property Damage" to which this Policy applies to a "Third Party". Tort liability means liability that would be imposed by law in the absence of any written contract. Written contract includes any written indemnity agreement entered into by the "Insured" with a "Third Party".

(Hann decl., para. 9; Primary P&I Policy, U.S Protection and Indemnity Rider Clauses, p. 13 of 50, paras. 2 & 3.)[35]

The Primary P&I Policy also contained the following blanket waiver of subrogation provision:

4. Blanket Waiver of Subrogation

   4.1 We agree to waive our rights of subrogation against any principal where waiver is required by written contract but only in respect of liability for Bodily Injury and/or Property Damage arising out of operations performed by you the named Insured and only to the extent required under said written contract.

(Hann decl., para. 9; Primary P&I Policy, U.S Protection and Indemnity Rider Clauses, p. 13 of

---

[35] Uncontested Fact No. 30.

50, para. 4.)[36]

The Primary P&I Policy had a $15,000 deductible.[37] The amounts of the initial fees and costs of the attorneys and investigators as well as the payments of the confidential settlement with James Hammond exceeded the $15,000 deductible under the Primary P&I Policy.[38]

The Primary P&I Policy had $1 million policy limits.[39] The policy limits were reduced by investigator expenses and attorney's fees, among other enumerated costs and expenses of litigation.[40] Prior to its dismissal from this suit, Munich Re had exhausted its $1 million limits of coverage under the Primary P&I Policy through payment of settlements, attorney's fees, the costs of suit and expenses of investigation.[41]

### D. The "Naming" and "Waiving" Provisions of the Excess Policy

Certain Underwriters at Lloyd's, London and Navigators Insurance Company (hereafter collectively "Excess Underwriters") issued Cover Note TRM-407507, on January 9, 2017 to Rodi Marine, L.L.C. in Lafayette, Louisiana, through Rodi's brokers also located in Lafayette, with a policy period starting on January 1, 2017.[42] Accordingly, the Excess Policy was delivered in Louisiana.[43] Similarly, the Excess Policy contained the following Choice of Law & Jurisdiction provision: "In case of any dispute arising out of this insurance, the same shall be governed by and construed in accordance with Louisiana law and practice, jurisdiction subject to Institute Service of Suit Clause."[44]

---

[36] Uncontested Fact No. 31.
[37] Uncontested Fact No. 32.
[38] Uncontested Fact No. 33.
[39] Uncontested Fact No. 34.
[40] Uncontested Fact No. 35.
[41] Uncontested Fact No. 36.
[42] Uncontested Fact No. 37.
[43] Uncontested Fact No. 38.
[44] Uncontested Fact No. 39.

The WILDCAT was listed on the Schedule of Vessels.[45] GJR is named as an Assured on the Risk Details.[46] According to the definition of "Insured" discussed further below, Item 1 of the Declarations lists the Name and Address of the Named Insured "As per Risk Details".[47] Accordingly, GJR is a Named Insured and thus an "Insured" under the Excess Policy.[48]

The Excess Policy's definition of "Insured" includes additional insureds where required by written contract, as follows:

13. **INSURED**

The word "Insured", wherever used in this Policy, shall mean only the following:

(a) the named "Insured" set out in Item 1 of the Declarations

* * *

(d) any person or organization, other than the named "Insured", included as an additional insured in the policies listed in Item 2 of the Declarations but not for broader coverage than is available to such person or organization under such underlying policies;

(*Id.*, § IV(13), p. 25 of 40.)[49]

Item 2 of the Declarations identifies the Underlying Insurance(s) "AS PER SCHEDULE ATTACHED".[50] The Schedule of Underlying Insurances includes Navigators' Marine General Liability Policy No. HO17LIA00252401, in other words, the MGL Policy discussed in § II(B), *supra*.[51] Accordingly, because Fieldwood qualifies as an additional assured on the MGL Policy, as well as the Primary P&I Policy, Fieldwood also is included as an "Insured" on the Excess Policy.[52]

---

[45] Uncontested Fact No. 40.
[46] Uncontested Fact No. 41.
[47] Uncontested Fact No. 42.
[48] Uncontested Fact No. 43.
[49] Uncontested Fact No. 44.
[50] Uncontested Fact No. 45.
[51] Uncontested Fact No. 46.
[52] Uncontested Fact No. 47.

The Excess Policy also contains the following waiver of subrogation endorsement:

> Insurers agree to waive their rights of subrogation against any principal where waiver is required by written contract but only in respect of liability for Bodily Injury and/or Property Damage arising out of operations performed by the Named Assured and only to the extent required under said written contract.

(*Id*., Waiver of Subrogation Endorsement, p. 34 of 40.)[53]

On April 17 and 18, 2017, the M/V WILDCAT was working and performing services pursuant to both the GJR Brokerage Agreement and the Time Charter.[54] The GJR Brokerage Agreement required GJR to obtain a waiver of subrogation on all its insurance policies.[55] Accordingly, Excess Underwriters agreed to waive their rights of subrogation against Fieldwood for the Bodily Injury claims arising out of the Allision.[56]

### E. The Deductible Paid by the Rodi Entities.

The Primary P&I Policy was subject to a deductible of $15,000.00.[57] That $15,000 deductible was exceeded by the confidential settlement of the personal injury claims of James Hammond, and the expenses of investigation and attorney's fees.[58] The MGL Policy had a $5,000.00 deductible which likewise was consumed by the foregoing payments towards settlement, investigation and attorneys.[59]

In accordance with the Primary P&I Policy, Munich Re funded the settlements of the claims of the master and all crewmembers of the WILDCAT as well as all the passengers, except for Antonio Smith.[60] Additional payments towards investigation and attorney's fees ultimately

---

[53] Uncontested Fact No. 48.
[54] Uncontested Fact No. 49.
[55] Uncontested Fact No. 50.
[56] Uncontested Fact No. 51.
[57] Uncontested Fact No. 52.
[58] Uncontested Fact No. 53.
[59] Uncontested Fact No. 54.
[60] Uncontested Fact No. 55.

exhausted the $1 million limits of the Primary P&I Policy.[61]

After exhaustion of the limits of the Primary P&I Policy, Antonio Smith's claims were the sole remaining personal injury claim against GJR and Management.[62] The MGL Policy had policy limits of $1 million.[63] The Excess Policy had policy limits of $15 million, excess of underlying limits.[64]

Excess Underwriters and Navigators' contributed to the funding of the confidential settlement of Antonio Smith's claims.[65] Neither Rodi Marine, L.L.C., GJR or Management contributed any funds to the settlement of Antonio Smith's claims.[66]

### III. LAW AND ARGUMENT

#### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 10(c), Fieldwood adopts and incorporates § III(A), entitled "Summary Judgment Standard" from its Rodi Marine Memo., Doc. 183-1, pp. 9-10.

#### B. The GJR Brokerage Agreement is a Maritime Contract Interpreted in Accordance with the General Maritime Law.

Pursuant to Fed. R. Civ. P. 10(c), Fieldwood adopts and incorporates § III(B), of the same title, from its Memorandum in Support of Motion for Partial Summary Judgment to Dismiss the Indemnity and Insurance Claims of the Rodi Entities against Fieldwood Energy LLC, Doc. 188-1, pp. 12-13.

#### C. The Rodi Entities' Potential Recovery against Fieldwood is Limited to the Policy Deductible under the Primary P&I Policy.

The issues presented by this motion are relatively straightforward. The Rodi Entities filed a First Superseding and Amended Third Party Complaint against Fieldwood but have only

---

[61] Uncontested Fact No. 56.
[62] Uncontested Fact No. 57.
[63] Uncontested Fact No. 58.
[64] Uncontested Fact No. 59.
[65] Uncontested Fact No. 60.
[66] Uncontested Fact No. 61.

paid a $15,000.00 deductible in the defense of the potential and actual personal injury claims arising out of the Allision. The remaining claims, attorney's fees and costs were incurred by the insurers of the Rodi Entities. Munich Re's counterclaim against Fieldwood was dismissed. Neither Navigators nor Excess Underwriters have filed a claim against Fieldwood. Settled principles of insurance law warrant the limitation of the Rodi Entities' recovery against Fieldwood, if at all, to the $15,000.00 deductible.

> **1. It is undisputed that the Rodi Interests have only paid $15,000 in defense of the personal injury claims arising out of the Allision.**

If the insurer has paid the entire loss suffered by its insured, then it is the only real party in interest and must sue in its own name. *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 279-81 (1949); *Underwriters at Interest on Cover Note JHB92M1058079 v. Nautronix Ltd.*, 79 F.3d 480, 484 (5th Cir. 1996). However, if the insurer has paid only part of the loss, the insured and the insurer qualify as real parties in interest. *Ibid*.

It is undisputed that the Rodi Entities have paid their $15,000 deductible under the Primary P&I Policy. It is also undisputed that Munich Re has exhausted the $1 million limits of its policy in paying for numerous settlements (except for Antonio Smith), investigation expenses, and attorney's fees and costs. Similarly, Navigators and Excess Underwriters have funded, in part, the settlement of Antonio Smith's claims, and some portion of the Rodi Entities' attorney's fees and costs. Yet, neither Navigators nor Excess Underwriters have filed a claim against Fieldwood (nor could they as discussed in the next section).

Accordingly, while the current real parties in interest to the alleged indemnity and insurance claims against Fieldwood are the Rodi Entities, Navigators and Excess Underwriters, on the Rodi Entities have filed a claim. Because they are only "out-of-pocket" their deductible on the Primary P&I Policy, their maximum recovery is therefore should be limited to that

amount, as a matter of law.

> **2. Neither Navigators nor Excess Underwriters can Recover by Means of Subrogation against Fieldwood, an Additional Assured, for any Part of a Payment for a Risk Covered by their Policies.**

It is undisputed that the GJR Brokerage Agreement required GJR to name Fieldwood as an additional assured on all of GJR's insurance policies. In compliance with the foregoing, the MGL Policy's Blanket Additional Assured Endorsement named Fieldwood as an additional assured. Similarly, the Excess Policy also included Fieldwood as an Additional Insured on that policy because Fieldwood qualified as an additional insured on the MGL Policy.

As the U.S. Fifth Circuit recently observed in *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508 (5th Cir. 2019), it is a "fundamental principle of insurance law, [that] an insurer cannot by way of subrogation recover against its insured or an additional assured any part of its payment for a risk covered by the policy." *Id*. at 521. See also *State Farm Fire & Cas. Co. v. Sentry Indem. Co*., 316 So.2d 185, 188 (La. App. 3d Cir. 1975); *Ussery v. Hanover Ins. Co*., 222 So.2d 535, 538 (La. App. 2nd Cir. 1969); *Boston Ins. Co. v. Pendarvis*, 195 So.2d 692, 694 (La. App. 1st Cir. 1967) for Louisiana insurance law on this same point. This rule applies even when the additional assured is not covered under the policy for the specific risk at issue. *Id*.

Under the settled state of the law, because Fieldwood is undisputedly an additional insured on both the MGL Policy and the Excess Liability Policy, neither insurer can recover by means of subrogation against Fieldwood, as a matter of law. Fieldwood requests this Court to enter partial summary judgment on this basis declaring that Navigators and Excess Underwriters cannot subrogate against Fieldwood as a matter of law based on Fieldwood's status as an additional insured.

**3. To the extent Navigators and Excess Underwriters retained any potential rights of subrogation against their additional insured, Fieldwood, those rights were expressly waived by their respective policies.**

As discussed in the previous section, because Fieldwood is an additional insured under both the MGL Policy and the Excess Policy, neither Navigators nor Excess Underwriters are permitted to recover by means of subrogation against Fieldwood amounts either insurer may have paid to or on behalf of the Rodi Entities. Moreover, to the extent Navigators or Excess Underwriters claim another basis for subrogation against Fieldwood, the language of the MGL Policy and the Excess Policy expressly waived those rights. See generally *Lloyd's Syndicate 457*, 921 F.3d at 518; *Texaco Expl. & Prod'n, Inc. v. AmClyde Engineered Prods. Co., Inc.*, 448 F.3d 760, 781-82 (5th Cir. 2006).

This Court, in *Alexie v. Bisso Marine Co., Inc.*, 2009 WL 1507307 (E.D. La. 2009), succinctly granted summary judgment based upon the language of the contract and insurance policy an dismissed an intervention by an insurer that had waived subrogation. Bisso entered into a Master Subcontractor's Agreement with C&G Welding, that required C&G and its affiliates to waive subrogation rights against Bisso "in all insurance contracts". Commerce issued a Maritime Employer's Liability policy to C&G that contained a blanket waiver of subrogation endorsement. C&G's affiliate, Curtis Callais, and Commerce attempted to intervene in Alexie's suit against Bisso to recover benefits paid to Alexie under the Longshore & Harbor Workers' Compensation Act.

Judge Vance dismissed the intervention on summary judgment.

> "Louisiana and federal maritime law generally allow … waiver of subrogation provisions…." *Hudson v. Forest Oil*, No. 02-2225, 2003 WL 2127685, at *4 (E.D. La. June 02, 2003). Both the Louisiana Supreme Court and the Fifth Circuit have held that intervention petitions should be dismissed when the intervenors waive the right to recoup worker's compensation benefits. *Fontenot v. Chevron*, 676 So.2d 557, 566 (La. 1996); *Hudson v. Forest Oil Corp.*,

372 F.3d 742, 743-44 (5th Cir. 2004).

*Id.* at *1.

Were Navigators and Excess Underwriters to attempt to intervene as real parties in interest, their proposed interventions should be denied on the grounds of futility based on Fieldwood's status as an additional insured and the express waivers of subrogation in the MGL Policy and the Excess Policy. GJR agreed to waive subrogation against Fieldwood on all its policies. The MGL Policy and the Excess Policy both contained express waivers of subrogation. Accordingly, to the extent Navigators and Excess Underwriters could potentially recover subrogation against their additional insured, Fieldwood – which would be contrary to Louisiana law, those rights of subrogation were expressly waived in their respective policies. As a result, Fieldwood requests this Court enter partial summary judgment enforcing the waiver of subrogation provisions of the MGL Policy and the Excess Policy, and concluding that Navigators and Excess Underwriters have expressly waived their rights of subrogation against Fieldwood for the personal injury claims asserted against the Rodi Entities.

### 4. To the extent Navigators and Excess Underwriters may have assigned to the Rodi Entities their rights to recover against Fieldwood, the Rodi Entities can recover no more than the insurers who have waived their rights of subrogation in favor of Fieldwood

To the extent Navigators and Excess Underwriters have assigned to the Rodi Entities the insurers' rights to recovery (in an obvious attempt to avoid their inability to subrogate against Fieldwood, as discussed above), it should achieve little. An "assignee 'steps into the shoes' of the assignor and acquires <u>only those rights possessed by the assignor</u> at the time of the assignment." *Morgan v. Americas Ins. Co.*, 2017 WL 6211043 (E.D. La. 2017) (Milazzo, J.) (quoting *Conerly Corp. v. Regions Bank*, 668 F. Supp. 2d 816, 812 (E.D. La. 2009) (Vance, J.)(emphasis added). This concept is also recognized in the general maritime law, where the

assignee essentially steps into the assignor's shores. *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 603-04 (5th Cir. 2010).

In this case, were the Rodi Entities to step into the shoes of Navigators and Excess Underwriters against Fieldwood, their claims would likewise be barred by the naming of Fieldwood as an additional insured on both parties (thereby precluding subrogation by those insurers against Fieldwood), and by the express waiver of subrogation against Fieldwood. In other words, because neither Navigators nor Excess Underwriters can recover from Fieldwood funds they paid to or on behalf of the Rodi Entities, the Rodi Entities cannot through an assignment obtain any greater rights against Fieldwood than the insurers had to assign.

In *Marathon Oil Co. v. Mid-Continent Underwriters*, 786 F.2d 1301 (5th Cir. 1996), the Fifth Circuit short-circuited a similar attempt by British Underwriters to recover reimbursement from settlement funds received by a personal injury claimant, Tye, and paid by the additional insured, Marathon, on their policy and against whom they had waived their rights of subrogation.

> British Underwriters contend that the waiver of subrogation is co-extensive with coverage and thus did not apply with regard to Marathon's uninsured exposure. No waiver of subrogation was required, however, with respect to covered liability, for the provision of insurance necessarily implies that the insurer will not seek to recoup amounts paid by it to satisfy insured claims. Were this not so, the insurance would be illusory. <u>The addition of a waiver-of-subrogation clause reinforces the provision implied by law, but the clause is not merely redundant, particularly when, as here, "all subrogation" is waived. Because they had waived "all subrogation," British Underwriters could not have sued in their own name to recover from Marathon any part of the $60,000 they paid Tye, even on the theory that Marathon, in its uninsured capacity as platform owner, was contributorily liable as a joint tortfeasor</u>.

*Id*. at 1303-04 (emphasis added).

Accordingly, in the event Navigators and Excess Underwriters have attempted to assign their subrogation rights against Fieldwood to the Rodi Entities, which rights were waived as a matter of law and contract, the Rodi Entities' claims as assignees of waived subrogation rights

cannot recover against Fieldwood on that basis either.

## CONCLUSION

For the foregoing reasons, Fieldwood Energy LLC requests this Court grant this motion, and enter an Order limiting the recovery of GJR Marine, LLC and Rodi Marine Management, LLC to the $15,000 deductible under the Primary P&I Policy issued by Munich Re. Fieldwood also requests this Court to enter partial summary judgment in favor of Fieldwood and against Navigators and Excess Underwriters that those insurers cannot recover via subrogation, any amounts they have paid to or on behalf of the Rodi Entities, based on Fieldwood's status as an additional insured on both policies, and those policies' express waiver of subrogation. Lastly, to the extent Navigators and Excess Underwriters have assigned to the Rodi Entities the insurers' rights to recover via subrogation against Fieldwood, because those insurers' cannot subrogate against Fieldwood, neither can the Rodi Entities, as a matter of law.

| | |
|---|---|
| May 12, 2020<br>New Orleans, Louisiana | Respectfully submitted:<br><br>    /s/ James D. Bercaw<br>James D. Bercaw, T.A. (20492)<br>**KING & JURGENS, L.L.C.**<br>201 St. Charles Avenue, 45th Floor<br>New Orleans, Louisiana 70170<br>Telephone: (504) 582-3800<br>Facsimile: (504) 582-1233<br>Email: jbercaw@kingkrebs.com<br><br>*Counsel for Claimant / Third Party Defendant, Fieldwood Energy LLC* |